**Hugh Larry BELL et al., Plaintiffs-Appellants,**

v.

**WEST POINT MUNICIPAL SEPARATE SCHOOL DISTRICT et al., Defendants-Appellees.**

**No. 30175.**

United States Court of Appeals, Fifth Circuit.

July 8, 1971.

Fred L. Banks, Jr., Melvyn R. Leventhal, Reuben V. Anderson and John A. Nichols, Jackson, Miss., Jonathan Shapiro, Jack Greenberg, James Nabrit, III, Norman Chachkin, New York City, for plaintiffs-appellants.

Thomas J. Tubb, West Point, Miss., for defendants-appellees.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

In this school desegregation case the issue is whether the Board of Trustees for the West Point, Mississippi School District may validly close two schools as part of a plan to establish a unitary school system within the requirements of Green v. County School Board of New Kent County, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, and Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed. 2d 19.

By an order entered on May 8, 1970, the District court refused to alter West Point's desegregation plan which had been in operation since the court's previ-

ous order of January 21, 1970. The plan assigns all students in the district (1,852 whites, 2,388 blacks) to five different schools according to grade attended. Racial segregation is virtually impossible since all the children in a particular grade attend the same school irrespective of the physical location of the student's home within the district.

However, the West Point school plan closed two schools [1] solely because of the fear on the part of the Board of Trustees that whites would not attend these formerly all-Negro schools located within the black neighborhood. As a result of the schools being closed, less classroom space became available so that the remaining five schools were forced to conduct classes on a "split session" [2] or "two shift a day" basis.

The closing of these schools for purely racial reasons is impermissible under Brown v. Board of Education of Topeka, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, which commands that the public school systems operate free from racial discrimination. While it is undisputed that a particular school may be terminated for sound educational reasons, an otherwise useful building may not be closed merely because the school board speculates that whites will refuse to attend the location. Such action constitutes racial discrimination in violation of the Fourteenth Amendment.

Accordingly, we hold that Fifth Street Junior and Senior High School and Northside Elementary School cannot be closed for the reasons shown in the record below.

The case is hereby remanded to the district court with directions to formulate a school desegregation plan not inconsistent with this order.

Remanded with directions.

CLARK, Circuit Judge (specially concurring):

Under our recent decision in Lee v. Macon County Board of Education, F.2d 746 (5 Cir. 1971) (Part IV), not published at the time the district court acted in this cause, I agree that the present state of the record requires reversal. However my concurrence is based upon the understanding that this mandate does not deprive the district judge of discretion to determine whether he will hold additional hearings or consider additional evidence if such hearings or evidence might show that sound educational principles underlay the temporary discontinuance of the use of the Fifth Street and/or Northside school facilities. Cf. Gordon v. Jefferson Davis Parish School Board, 446 F.2d 266 (5 Cir. 1971).

The West Point Municipal Separate School District plan has that one controlling virtue found in too few court-mandated school operations of any racial makeup; *it has worked!* See Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). This majority black school district is the sole such example known to me which has been able to move from a totally segregated past to a totally integrated present, while preserving a disciplined atmosphere in which a meaningful education for pupils of both races has been afforded. Unless the trial court finds it must determine that this accomplishment was made at a constitutionally impermissible sacrifice on the part of the black community then the law does not

---

1. Before the desegregation plan was implemented by the district court on January 21, 1970, West Point operated a total of seven schools which would not have qualified as a unitary system under Green v. County School Board of New Kent County, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716.

2. In a "split session" arrangement, the pupil attends school in either the morning or the afternoon shift, enabling the school building to handle approximately twice the number of students it could normally house in a single day. Under the West Point plan the morning shift begins at 7:45 A.M. and ends at 12:40 P.M., and the afternoon shift lasts from 1:00 P.M. to 5:45 P.M. There is no significant difference in the racial composition of any of the shifts.

require this court to intervene. Rather, the district can be left to continue to solve its problems in its own successful way.

We have always recognized school cases as unique. With equal certainty, we should recognize that no court should dismantle a viable unitary school system merely to worship at the altar of form. If the closing of these school facilities and the utilization of double shifts for student attendance can be demonstrated to be supportable on any nonracial ground, such as maintaining an extra busy school schedule during transition years, which while utilizing fully suitable physical facilities, maintained an atmosphere in which children could be successfully taught in a totally new system for West Point, then the district court ought to be free to determine that the school district was justified in allowing the temporary discontinuance of these school physical plants as a matter of sound educational judgment. At least such a showing, if it can be made, is not foreclosed by our mandate here.