**Alta Oveta MIMS et al., Appellants,**

v.

**The DUVAL COUNTY SCHOOL BOARD et al., Appellees.**

**No. 30418.**

United States Court of Appeals, Fifth Circuit.

Aug. 16, 1971.

James C. Rinaman, Jr., Gen. Counsel, Yardley D. Buckman, and David P. Tumin, Asst. Counsel, Millar & Fallen, Jacksonville, Fla., for appellees.

Drew S. Days, III, Jack Greenberg, Norman J. Chachkin, New York City, Norris D. Woolfork, III, Orlando, Fla., for appellants.

William H. Maness, Jacksonville, Fla., for Duval Teachers Ass'n, amicus curiae.

Jack G. Hand, Jr., Jacksonville, Fla., for Jacksonville Council for Creative Curriculum, amicus curiae.

Before BELL, AINSWORTH, and GODBOLD, Circuit Judges.

BELL, Circuit Judge:

Duval County is the thirteenth largest school system in the nation. It is comprised of 137 schools with 122,549 students (1970–71 school term), in a system having a land area of 840 square miles. The student racial ratio is 72 per cent white and 28 per cent black. The black student population is largely concentrated in the core area of the system. The defendant school board devised a plan of desegregation to convert the formerly segregated system into a unitary system in keeping with the teaching of Swann v. Charlotte-Mecklenburg Board of Education, 1971, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554, following our remand for consideration of the case in light of *Swann*.

The district court modified the plan in two respects; one to achieve a greater degree of desegregation as between two high schools, and the other to alleviate problems in long distance bussing between the beaches and the inner city. The comprehensive opinion of the district court is reported. Mims v. Duval County School Board, M.D.Fla., 1971, 329 F.Supp. 123.[1]

This appeal involves only a single question. Thus the litigation concerning the desegregation of the Duval County system, which began in 1960, has at last washed out to the following issue: Whether the district court erred in approving the closing of five formerly black schools as a part of the plan of converting to a unitary system.

The rule in this circuit as to the closing of formerly all black schools is that such closings are prohibited where undertaken for racial reasons of the type that may be equated with invidious discrimination. Lee v. Macon County Board of Education, 5 Cir., 1971, 448 F.2d 746.

*See also* Bell v. West Point Municipal School District, 5 Cir., 1971, 446 F.2d 1362; Gordon v. Jefferson Davis Parish School Board, 5 Cir., 1971, 446 F.2d 266.

The corollary of this rule is that schools, black or white, may be closed for non-racial reasons. *See* Carr v. Montgomery County Board of Education, 5 Cir., 1970, 429 F.2d 382, 385, where the

---

1. The case was formerly styled Braxton v. Duval County School Board. Mims and others were added on remand in order that the class of plaintiffs might be represented by persons having a present interest in the litigation.

court speaks in terms of an absence of proof in the record of racial motivation and the presence of sound non-racial considerations for the closings (inferior physical plant or site). *See also* Wright v. Board of Public Instruction of Alachua County, 5 Cir., 1970, 431 F.2d 1200, 1202 (ample educational reasons for school closing and absence of proof of discrimination).

■ We come then to the facts of this case. During the 1969–70 school term, there were 27 schools in the system having all black or virtually all black student bodies. As a part of the present unitary system plan, the school board proposed to close nine of these 27 schools and appellants objected. These schools were: Blocker, Fairfield, A. L. Lewis, Livingston, East Jacksonville, Forest Park, Mount Herman, and John E. Ford elementary schools, and Darnell-Cookman Junior High. All were located in the so-called ghetto section of the core city as distinguished from the core city itself where the great majority of the black citizens reside.

During the trial, it was agreed that Livingston would not be closed. Appellants withdrew by stipulation their objection to closing Blocker, Fairfield, and A. L. Lewis. This leaves for consideration East Jacksonville, Forest Park, Mount Herman, John E. Ford, and Darnell-Cookman. The five schools had a combined present attendance of 3,601 students as compared to the total of some 35,000 black school children in the system.

### East Jacksonville

The South Florida Desegregation Center recommended in its 1968 report on the Duval County school system that this school be abandoned as early as possible, stating that it was unsuitable for educational purposes. An expert for appellants was almost as strong in his view of the present unsuitability of the school for educational purposes. The building is located on a very small site and in a declining neighborhood with a declining school population (down from 330 to 201 in the last five years).

### Forest Park

The district court made the following findings with respect to this school:

The South Florida Desegregation Center described Forest Park (#104) in these words: "One Negro school is particularly displeasing in terms of location. Forest Park Elementary No. 104 is a large (1,000 capacity), relatively new building on a 1.72 acre site. The school is 'surrounded by a City incinerator on the East, a polluted creek on the North, and a meat and poultry (abattoir) company on the West. This has caused a serious problem with regard to stench and sewage backing up in the school plant.'" In urging that this school should remain open, the attorney for plaintiffs presented evidence that the incinerator was no longer in operation. However that may be, it is undisputed that the slaughter house and McCoy's Creek are still producing highly noxious odors which even permeate the school cafeteria.

These findings are supported by the record. In addition, this school is also located on a very small site in a deteriorating neighborhood with a declining school population (down from 1,216 to 787 in the last five years). The site as well as the cafeteria was inadequate.

### Mount Herman

This is a relatively new school (built in 1960) and is located on a small site in a neighborhood in the midst of the hard narcotics area of the city of Jacksonville. Incidences of vandalism and intrusion are such that teachers and children are locked in their rooms for safety. School patrolmen in the halls and on the grounds have proven insufficient deterrents to prevent assaults on teachers and students. The school board has difficulty in maintaining a teaching staff in this school. In five years, the enrollment has declined from 1,080 to 800.

 

#### John E. Ford

The record discloses that the vandalism and assault problems in this school are parallel to those in the Mount Herman school. It is in the same deteriorating neighborhood and the decline in enrollment in five years has been from 1,-078 to 815. The grounds are in adequate due to size. Moreover, the school building, if it is to be maintained, is in need of rehabilitation due to vandalism and misuse despite its rehabilitation in 1970.

#### Darnell-Cookman

This is a junior high school with an enrollment of 998 as compared to 1,405 in 1966. It is in the neighborhood with the Mount Herman and John E. Ford elementary schools. It is located on a former landfill and the grounds are of limited usefulness due to foreign objects such as broken glass and cans percolating to the surface. The vandalism and intrusion problem is similar to that present at Mount Herman and Ford. The teachers and students are likewise locked in for safety, although the grounds have been fenced and have locked gates.

These facts and many others contained in the record furnish a solid basis for the conclusions reached by the district court that the school board acted in good faith in closing these schools; that there was no invidious discrimination in the action, and that the closings were a reasonable part of a workable plan of desegregation.

The fact that some of the former white schools in the system were located on small sites or were older than some of the schools selected for closing does not rise to the level of demonstrating proscribed discriminatory activity. This is likewise true as to the argument, if such be the case and we are not clear that it is, that discrimination inheres in the plan unless former white schools are closed along with black schools.

In sum, the closings must be grounded on non-racial reasons. That is the case here although appellants may no doubt and with justification question why these particular schools were not selected for closing prior to the conversion to a unitary system. The answer is two-fold: Perhaps their deterioration has been recent; but in any event, it would not be remedial to require their continued operation in the absence of a showing of racial discrimination in their closing.

The findings of the district court are not clearly erroneous and the conclusions reached are ample in law and fact. There was no invidious discrimination in the closing. Indeed, the record makes it clear that the schools were closed for sound non-racial reasons. *See* Carr v. Montgomery Board of Education, *supra*, 429 F.2d at 385.

Affirmed.