**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Eric HALL, Defendant-Appellant.**

**No. 72–1622.**

United States Court of Appeals,
Fifth Circuit.

Nov. 24, 1972.

Rehearing Denied Jan. 30, 1973.

Wm. J. Sheppard, Jacksonville, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., John J. Daley, Jr., Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before WISDOM, THORNBERRY and GODBOLD, Circuit Judges.

WISDOM, Circuit Judge:

This case presents the question whether a district court has power to punish for criminal contempt a person who, though neither a party nor bearing any legal relationship to a party, violates a court order designed to protect the court's judgment in a school desegregation case. We uphold the district court's conclusion that in the circumstances of this case it had this power, and affirm the defendant's conviction for contempt.

On June 23, 1971, the district court entered a "Memorandum Opinion and Final Judgment" in the case of Mims v. Duval County School Board. The court required the Duval County [Jacksonville], Florida school board to complete its desegregation of Duval County schools, in accordance with the Supreme Court's decision in Swann v. Charlotte-Mecklenburg Board of Education, 1971, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554, by pairing and clustering a number of schools which had theretofore been predominantly one-race schools. This order culminated litigation begun eleven years before, Braxton v. Board of Public Instruction.[1] This Court affirmed the district court's order in Mims v. Duval County School Board, 5 Cir. 1971, 447 F.2d 1330. The district court retained jurisdiction to enter such orders as might be necessary in the future to effectuate its judgment.

Among the schools marked for desegregation under the plan approved by the district court was Ribault Senior High School, a predominantly white school. The plan directed pairing of Ribault with William E. Raines Senior High School, a predominantly black school, so

---

1. Decisions of this Court in *Mims* and *Braxton* are reported at 447 F.2d 1330, 402 F.2d 900, and 326 F.2d 616. Decisions of the district court are reported at 338 F.Supp. 1208 and 329 F.Supp. 123.

that the black enrollment would be 59 percent at Raines and 57 percent at Ribault. After the desegregation order was put into effect racial unrest and violence developed at Ribault, necessitating on one occasion the temporary closing of the school. On March 5, 1972, the superintendent of schools and the sheriff of Jacksonville filed a petition for injunctive relief in the *Mims* case with the district court. This petition alleged that certain black adult "outsiders" had caused or abetted the unrest and violence by their activities both on and off the Ribault campus. The petition identified the appellant Eric Hall, allegedly a member of a militant organization known as the "Black Front", as one of several such outsiders who, in combination with black students and parents, were attempting to prevent the normal operation of Ribault through student boycotts and other activities. As relief the petitioners requested an order "restraining all Ribault Senior High School students and any person acting independently or in concert with them from interfering with the orderly operation of the school and the Duval County School system, and for such other relief as the court may deem just and proper."

At an ex parte session on March 5, 1972, the district court entered an order providing in part:

1. All students of Ribault Senior High School, whether in good standing or under suspension, and other persons acting independently or in concert with them and having notice of this order are hereby enjoined and restrained from

(a) Obstructing or preventing the attendance in classes of students and faculty members;

(b) Harassing, threatening or intimidating any faculty, staff member or employee of Ribault Senior High School or the Duval County School Board;

(c) Harassing, threatening or intimidating any student en route to and from school;

(d) Destroying or attempting to destroy, defacing or attempting to deface any structure, buildings, materials or equipment of Ribault Senior High School or the Duval County School Board;

(e) Committing any other act to disrupt the orderly operation of Ribault Senior High School or any other school of the Duval County School System;

2. Until further order of this Court, no person shall enter any building of the Ribault Senior High School or go upon the school's grounds except the following:

(a) Students of Ribault Senior High School while attending classes or official school functions;

(b) The faculty, staff, and administration of Ribault Senior High School and other employees of the Duval County School Board having assigned duties at the school;

(c) Persons having business obligations which require their presence on the school's premises;

(d) Parents of Ribault Senior High School students or any other person who has the prior permission of the principal or his designee to be present on the school's premises;

(e) Law enforcement officials of the City of Jacksonville, the State of Florida or the United States Government.

The order went on to provide that "[a]nyone having notice of this order who violates any of the terms thereof shall be subject to arrest, prosecution and punishment by imprisonment or fine, or both, for criminal contempt under the laws of the United States of America. . . ." The court ordered the sheriff to serve copies of the order on seven named persons, *including Eric Hall*. Hall was neither a party plaintiff

nor a party defendant in the *Mims* litigation, and in issuing this order the court did not join Hall or any of the other persons named in the order as parties.

On March 9, 1972, four days after the court issued its order, Hall violated that portion of the order restricting access to Ribault High School by appearing on the Ribault campus. When questioned by a deputy United States marshal as to the reasons for his presence, Hall replied that he was on the grounds of Ribault for the purpose of violating the March 5 order.[2] The marshal then arrested Hall and took him into custody. After a non-jury trial, the district court found Hall guilty of the charge of criminal contempt and sentenced him to sixty days' imprisonment.

On this appeal Hall raises two related contentions. Both contentions depend on the fact that Hall was not a party to the *Mims* litigation and the fact that, in violating the court's order, he was apparently acting independently of the *Mims* parties. He first points to the common law rule that a nonparty who violates an injunction solely in pursuit of his own interests cannot be held in contempt. Not having been before the court as a party or as the surrogate of a party, he argues that in accordance with this common law rule he was not bound by the court's order. Second, he contends that Rule 65(d) of the Federal Rules of Civil Procedure prevents the court's order from binding him, since Rule 65(d) limits the binding effect of injunctive orders to "parties to the action, their officers, agents, servants, employees, and attorneys, and . . . those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." We reject both contentions.

I.

For his first contention, that a court of equity has no power to punish for contempt a nonparty acting solely in pursuit of his own interests, the appellant relies heavily on the two leading cases of Alemite Manufacturing Corp. v. Staff, 2 Cir. 1930, 42 F.2d 832, and Chase National Bank v. City of Norwalk, 1934, 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894. In *Alemite* the district court had issued an injunction restraining the defendant and his agents, employees, associates, and confederates from infringing the plaintiff's patent. Subsequently a third person, not a party to the original suit and acting entirely on his own initiative, began infringing the plaintiff's patent and was held in contempt by the district court. The Second Circuit reversed in an opinion by Judge Learned Hand, stating that "it is not the act described which the decree may forbid, but only that act when the defendant does it." 42 F.2d at 833. In *Chase National Bank* the plaintiff brought suit against the City of Norwalk to obtain an injunction forbidding the removal of poles, wires, and other electrical equipment belonging to the plaintiff. The district court issued a decree enjoining the City, its officers, agents, and employees, "and all persons whomsoever to whom notice of this order shall come" from removing the equipment or otherwise interfering with the operation of the plaintiff's power plant. The Supreme Court held that the district court had violated "established principles of equity jurisdiction and procedure" insofar as its order applied to persons who were not parties, associates, or confederates of parties, but who merely had notice of the order. See also Regal Knitwear Co. v. NLRB, 1945, 324 U.S. 9, 13, 65 S.Ct. 478, 89 L.Ed. 661;

---

2. Prior to March 5 a police captain had invited Hall to assist with efforts to restore order at Ribault. Though this invitation was apparently made at the request of an employee or employees of the Duval County School Board, Hall does not contend on this appeal that he was on the grounds of the school with the school board's permission on March 9.

Scott v. Donald, 1896, 165 U.S. 107, 17 S.Ct. 262, 41 L.Ed. 648.

This case is different. In *Alemite* and *Chase National Bank* the activities of third parties, however harmful they might have been to the plaintiffs' interests, would not have disturbed in any way the adjudication of rights and obligations as between the original plaintiffs and defendants. Infringement of the *Alemite* plaintiff's patent by a third party would not have upset the defendant's duty to refrain from infringing or rendered it more difficult for the defendant to perform that duty. Similarly, the defendant's duty in *Chase National Bank* to refrain from removing the plaintiff's equipment would remain undisturbed regardless of the activities of third parties, as would the plaintiff's right not to have its equipment removed by the defendant. The activities of Hall, however, threatened both the plaintiffs' right and the defendant's duty as adjudicated in the *Mims* litigation. In *Mims* the plaintiffs were found to have a constitutional right to attend an integrated school. The defendant school board had a corresponding constitutional obligation to provide them with integrated schools and a right to be free from interference with the performance of that duty. See Brewer v. Hoxie School District, 8 Cir. 1956, 238 F.2d 91, 95. Disruption of the orderly operation of the school system, in the form of a racial dispute, would thus negate the plaintiffs' constitutional right and the defendant's constitutional duty. In short, the activities of persons contributing to racial disorder at Ribault imperiled the court's fundamental power to make a binding adjudication between the parties properly before it.

 Courts of equity have inherent jurisdiction to preserve their ability to render judgment in a case such as this. This was the import of the holding in United States v. United Mine Workers of America, 1947, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884. There the district court had issued a temporary restraining order forbidding a union from striking, though there was a substantial question of whether the Norris-La-Guardia Act had deprived the district court of jurisdiction to issue such an order. The Supreme Court upheld the defendants' contempt conviction for violation of this order. As an alternative holding the Court stated that the contempt conviction would have been upheld even if the district court had ultimately been found to be without jurisdiction. This holding affirmed the power of a court of equity to issue an order to preserve the status quo in order to protect its ability to render judgment in a case over which it might have jurisdiction. 330 U.S. at 293, 67 S.Ct. 677. See Walker v. Birmingham, 1967, 388 U.S. 307, 343–344, n. 3, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (Brennan, J., dissenting); United States v. Shipp, 1906, 203 U.S. 563, 573, 27 S.Ct. 165, 51 L.Ed. 319; Stewart v. Dunn, 5 Cir. 1966, 363 F.2d 591, 598; Carter v. United States, 5 Cir. 1943, 135 F.2d 858, 861.

The integrity of a court's power to render a binding judgment in a case over which it has jurisdiction is at stake in the present case. In *Mine Workers* disruptive conduct prior to the court's decision could have destroyed the court's power to settle a controversy at least potentially within its jurisdiction. Here the conduct of Hall and others, if unrestrained, could have upset the court's ability to bind the parties in *Mims*, a case in which it unquestionably had jurisdiction. Moreover, the court retained jurisdiction in *Mims* to enter such further orders as might be necessary to effectuate its judgment. Thus disruptive conduct would not only jeopardize the effect of the court's judgment already entered but would also undercut its power to enter binding desegregation orders in the future.

The principle that courts have jurisdiction to punish for contempt in order to protect their ability to render judgment is also found in the use of in rem injunctions. Federal courts have issued injunctions binding on all persons, re-

gardless of notice, who come into contact with property which is the subject of a judicial decree. See United States v. Dean Rubber Manufacturing Co., 1946, W.D.Mo., 71 F.Supp. 96; Converse v. Highway Construction Co., 6 Cir. 1939, 107 F.2d 127; Cherry v. Insull Utility Investments, Inc., 1932, N.D.Ill., 58 F.2d 1022, rev'd on other grounds sub nom. Guaranty Trust Co. v. Fentress, 7 Cir., 61 F.2d 329. A court entering a decree binding on a particular piece of property is necessarily faced with the danger that its judgment may be disrupted in the future by members of an undefinable class—those who may come into contact with the property. The in rem injunction protects the court's judgment. The district court here faced an analogous problem. The judgment in a school case, as in other civil rights actions, inures to the benefit of a large class of persons, regardless of whether the original action is cast in the form of a class action. See Bailey v. Patterson, 5 Cir. 1963, 323 F.2d 201, 206, cert. denied, 1963, 376 U.S. 910, 84 S.Ct. 666, 11 L. Ed.2d 609; Unemployed Workers Union v. Hackett, 1971, D.R.I., 332 F.Supp. 1372, 1379 n. 3; Snyder v. Board of Trustees, 1968, N.D.Ill., 286 F.Supp. 927. At the same time court orders in school cases, affecting as they do large numbers of people, necessarily depend on the cooperation of the entire community for their implementation.

As this Court is well aware, school desegregation orders often strongly excite community passions. School orders are, like in rem orders, particularly vulnerable to disruption by an undefinable class of persons who are neither parties nor acting at the instigation of parties. In such cases, as in voting rights cases, courts must have the power to issue orders similar to that issued in this case, tailored to the exigencies of the situation and directed to protecting the court's judgment. The peculiar problems posed by school cases have required courts to exercise broad and flexible remedial powers. See Swann v. Charlotte-Mecklenburg Board of Education, 1971, 402 U.S. 1, 6, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554. Similarly broad applications of the power to punish for contempt may be necessary, as here, if courts are to protect their ability to design appropriate remedies and make their remedial orders effective.

## II.

The appellant also asserts that Rule 65(d) of the Federal Rules of Civil Procedure prevents the court's order from binding him.[3] He points out that he was not a party to the original action, nor an officer, agent, servant, employee, or attorney of a party, and denies that he was acting in "active concert or participation" with any party to the original action.[4]

3. Rule 65(d) is as follows:
 *Rule 65. Injunctions.*
 \* \* \* \* \*
 *(d) Form and Scope of Injunction or Restraining Order.* Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

4. The government contends that Hall was acting "in active concert and participation" with parties to the action. In 1962, in an unreported order not made part of the record in the present case, the district court held that the *Braxton* suit was a class action pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure. Consequently, the government argues, all minor black children were and are parties to the *Braxton-Mims* litigation. Therefore Hall, by engaging in disruptive activities with some black students, was acting in concert and participation with parties under Rule 65(d).
 This argument fails because all minor black children were not parties to *Braxton* and *Mims*. Prior to the 1966 amend-

In examining this contention we start with the proposition that Rule 65 was intended to embody "the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." Regal Knitwear Co. v. NLRB, 1945, 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661. Literally read, Rule 65(d) would forbid the issuance of in rem injunctions. Note, Binding Nonparties to Injunction Decrees, 49 Minn.L.Rev. 719, 736 (1965). But courts have continued to issue in rem injunctions notwithstanding Rule 65(d), since they possessed the power to do so at common law and since Rule 65(d) was intended to embody rather than to limit their common law powers. See United States v. Dean Rubber Manufacturing Co., 1946, W.D.Mo., 71 F.Supp. 96; In re Lustron Corp.; 7 Cir. 1950, 184 F.2d 798, cert. denied, 1951, 340 U.S. 946, 71 S.Ct. 531, 95 L.Ed. 682; Converse v. Highway Construction Co., 6 Cir. 1939, 107 F.2d 127; Zeleznik v. Grand Riviera Theater Co., 6 Cir. 1942, 128 F.2d 533.

Similarly, we conclude that Rule 65(d), as a codification rather than a limitation of courts' common-law powers, cannot be read to restrict the inherent power of a court to protect its ability to render a binding judgment. See In re Williams, 1969, D.C.D.C., 306 F. Supp. 617. We hold that Hall's relationship to the *Mims* case fell within that contemplated by Rule 65(d). By deciding *Mims* and retaining jurisdiction the district court had, in effect, adjudicated the rights of the entire community with respect to the racial controversy surrounding the school system. Moreover, as we have noted, in the circumstances of this case third parties such as Hall were in a position to upset the court's adjudication. This was not a situation which could have been anticipated by the draftsmen of procedural rules. In meeting the situation as it did, the district court did not overstep its powers.

We do not hold that courts are free to issue permanent injunctions against all the world in school cases. Hall had notice of the court's order. Rather than challenge it by the orderly processes of law, he resorted to conscious, willful defiance. See Walker v. Birmingham, 1967, 388 U.S. 307, 87 S.Ct. 1824, 18 L. Ed.2d 1210.

It is true that this order was issued without a hearing, and that ordinarily injunctive relief cannot be granted without a hearing. See 7 J. Moore, Moore's Federal Practice ¶ 65.04[3] & n. 8a (1972). But we need not hold that this order has the effect of a preliminary or permanent injunction. Rather, the portion of the court's order here complained of may be characterized as a temporary restraining order, which under Rule 65(b) may be issued ex parte. The prohibition directed to restricting access to the school grounds nowhere purported to be an injunction. Moreover, Hall's violation occurred within four days of the issuance of the order, well within the ten-day limitation period for temporary restraining orders. The present case is therefore distinguishable from the situation presented in Harrington v. Colquitt

---

ment of Rule 23, Rule 23(a)(3) provided for what was then known as a "spurious" class action. The spurious class action was essentially a permissive joinder device, in which the court's decision would bind only those persons actually before the court. 3B J. Moore, Moore's Federal Practice ¶ 23.10 [1] (1969); Developments in the Law—Multiparty Litigation in the Federal Courts, 71 Harv.L.Rev. 874, 930 (1958). "It was an invitation and not a command performance." 3B J. Moore, supra, at § 23.10 [1].

Those persons who did not actually join in the litigation in this case, therefore, were not parties and are not parties now. The district court has not, since 1962, made any further determination that the *Braxton-Mims* litigation could be maintained as a class action, as required by present Rule 23(c). There is no evidence or allegation that Hall was acting in active concert or participation with any of the persons who actually were parties to the suit.

County Board of Education, 5 Cir. 1971, 449 F.2d 161, a direct appeal from a permanent injunction, in which this Court struck language purporting to enjoin persons beyond the scope of Rule 65(d).

We hold, then, that the district court had the inherent power to protect its ability to render a binding judgment between the original parties to the *Mims* litigation by issuing an interim ex parte order against an undefinable class of persons. We further hold that willful violation of that order by one having notice of it constitutes criminal contempt. The judgment of the district court is affirmed.