UNITED STATES of America

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 130, et al.**

Civ. A. No. 71–1779.

United States District Court,
E. D. Louisiana.

Aug. 4, 1976.

Equal Employment Opportunity Commission, Nancy Bragg, Denver Litigation Center, Denver, Colo., for plaintiff.

Jerry L. Gardner, Jr., Dodd, Barker, Boudreaux, Lamy & Gardner, New Orleans, La., for International Brotherhood of Electrical Workers, Local No. 130.

Victor H. Hess, Jr., Jackson & Hess, New Orleans, La., for N. O. Sheet Metal Work-

ers, International Brotherhood of Electrical Workers, Local 130 and N. O. Electrical Joint Apprenticeship.

Paul V. Cassisa, Bernard, Micholet & Cassisa, Metairie, La., for Mechanical Contractors Assn. of New Orleans.

Peter J. Butler, New Orleans, La., for American Assets, Inc.

Malcolm B. Robinson, Jr., Law Office of Emile Turner, New Orleans, La., for Bode Electric Co.

Lucas J. Giordano, Metairie, La., for Gulf Lightning Protection Co., W. H. Bower Spangenberg, Inc., R. K. Goode Co., Chauvin Electric, Bill Roberts, Inc. and Neon Sign Co.

Bernard Marcus, Deutsch, Kerrigan & Stiles, New Orleans, La., for Seaboard Electric Co.

Daniel Lund, Montgomery, Barnett, Brown & Read, New Orleans, La., for Kellog Co., Pullman, Inc. and Lummus Co.

Benjamin C. Toledano, Porteous, Toledano, Hainkel & Johnson, New Orleans, La., for Honeywell Corp.

J. Wm. Vaudry and Edward J. McCloskey, McCloskey, Dennery, Page & Hennesy, New Orleans, La., for Weisfeld & Son, Inc.

Harry A. Rosenberg and Rutledge C. Clement, Jr., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Ebasco Services, Inc.

S. Gene Fendler, Liskow & Lewis, New Orleans, La. and William A. Jones, Jr., Vinson, Elkins, Searls, Connally & Smith, Houston, Tex., for Ralph M. Parsons Co.

Clyde D. Merritt, New Orleans, La., for E. J. Hull Electric Co.

David L. Morgan, Jr., New Orleans, La., for A–1 Signs.

Neil H. Mixon, Jr., McCollister, Belcher, McCleary & Fazio, Baton Rouge, La., for Johnson Controls, Inc.

Bertrand F. Artigues, Coleman, Dutrey, Thomson, Meyer & Jurisich, New Orleans, La., for Veterans Electrical Service. ·

Charles A. Kronlage, Jr., Kronlage, Dittmann & Caswell, New Orleans, La., for Southern Instruments.

Albert H. Hanemann, Jr., Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, La., for The Ralph M. Parsons Co. (Additional counsel).

James E. Glancey, Jr., Loeb & Livaudais, New Orleans, La., for Lamar Dean Outdoor Advertising Co. of N. O.

Jesse S. Guillot, Emile W. Schneider, New Orleans, La., for Campagno Electric, Inc.

Michael S. Guillory, New Orleans, La., for Robert P. Defourneaux d/b/a R. P. Defourneaux Electrical Contractor.

William A. Norfolk, Baton Rouge, La., for Newtron, Inc.

Charles H. White, New Orleans, La., for Robinson Electrical Co.

J. B. Kiefer, Graham, Kiefer & Arceneaux, New Orleans, La., for Indelec, Inc.

Frederick S. Kullman, Sr., Kullman, Lang, Inman & Bee, New Orleans, La., for N. O. Electrical Joint Apprenticeship, South Louisiana Chapter of National Electrical Contractors.

Michael J. Molony, Jr., Milling, Benson, Woodward, Hillyer & Pierson, New Orleans, La., for Sheet Metal Workers.

## MEMORANDUM AND ORDER

R. BLAKE WEST, District Judge.

Pending before this Court is a motion filed by Third-Party Defendants to dismiss the third-party complaint of Defendants for failure to state a claim. Also pending is Plaintiff's motion for reconsideration of an order entered by the Court on April 28, 1976, denying Plaintiff's motion to amend its complaint so as to join Third-Party Defendants as primary defendants. The Court, after due consideration of all the matters presented, and for the reasons stated herein, is of the opinion that the motion to dismiss the third-party complaint for failure to state a claim should be GRANTED and the motion for reconsideration should be DENIED.

This proceeding was commenced on June 30, 1971, when the United States filed suit charging the defendants, the International Brotherhood of Electrical Workers, Local # 130 (IBEW), the Regional Chapter of the National Electrical Contractors Association (NECA), the New Orleans Electrical Joint Apprenticeship and Training Committee (JAC), and others, with discrimination against black individuals in their hiring and training programs, in violation of 42 U.S.C. § 2000e.

Subsequent to that date, and after considerable negotiations, the Court and the parties executed a Consent Decree on June 12, 1972, which permanently enjoined the defendants and their officers, agents, employers, successors, and all persons in active concert or participation with them from engaging in any act or practice which has the purpose or the effect of discriminating against applicants for apprenticeship or against apprentices on the basis of race. The only signatories to the decree were Plaintiff and the named defendants; no electrical contracting firm which was unaffiliated with NECA was a party to the Decree or any of the negotiations which led to its confection.

On October 6, 1975, the E.E.O.C., which was substituted as party plaintiff for the United States as a result of the 1972 Act, filed a motion to cite Defendants for contempt, based on their alleged failure to abide by the terms of the Consent Decree. Plaintiff asked the Court to cite Defendants for contempt, and at the same time sought monetary damages on behalf of certain named individuals in the amount of $464,-804.00, together with all costs of the proceedings.

As a result of this motion, Defendants filed a motion to bring in some thirty "outside" (non-affiliated with NECA) electrical contractors on the ground that the IBEW had a collective bargaining agreement in force with them, and, therefore, they could be liable to Third-Party Plaintiffs for back pay in the event that the IBEW was found to have engaged in discriminatory practices. This motion was filed some four years after the institution of suit and over three years from the date the Consent Decree was signed.

The basis of Defendants' motion to join these "outside" contractors was that ". . . the apprenticeship training program operated by the defendant 'JAC' furnishes apprentice employees to *two* categories of union contractors, namely:

A.  Union electrical contractors who are members of the defendant herein, South Louisiana Chapter, Inc., National Electrical Contractors Association ('NECA') and

B.  Other union electrical contractors, who have collective bargaining agreements executed with Local No. 130, but who are *not* members of NECA, referred to as 'outsiders'."

After a hearing on January 7, 1976, the motion for contempt was continued and the motion for leave to file a third-party complaint was granted over the strenuous objection of Plaintiff, which argued that there was no "privity" between Defendants and the proposed Third-Party Defendants, and, therefore, the new Third-Party Defendants could not be held liable for contempt. Following the Court's order permitting the filing of the third-party complaint, the E.E.O.C. apparently changed its position and on February 6, 1976 sought to amend the original complaint to add those contractors which were named as third parties and to name individually additional contractors who were members of NECA. On April 28, 1976 the Court denied the motion to amend as to the "outside" contractors,[1] which rul-

---

1.  As part of the Plaintiff's motion for reconsideration, a clarification as to which contractors the Court's denial of the amendment pertained was sought.

    At no time did the Court consider whether or not "inside" contractors (i. e., those who were members of NECA) could be joined. Indeed, no opposition to the motion for leave to amend was ever filed on behalf of the "inside" contractors. Rather, the Court is of the opinion that the signature of NECA on the Consent Decree is sufficient to bind NECA members. Thus, the only parties which the Court has ever

ing is the subject of Plaintiff's motion for reconsideration.

On May 12, 1976, the Court heard the motion to dismiss the third-party complaint and, at that time, took the motion under advisement pending supplemental memoranda on the motion for reconsideration.

## MOTION TO DISMISS THE THIRD-PARTY COMPLAINT

Third-Party Plaintiffs seek to assert liability against Third-Party Defendants on the ground that they acted in concert in violating the Consent Decree. Thus, the basic issue is whether these "outside" contractors had sufficient privity with the signatories to the Consent Decree to be held liable as Third-Party Defendants in contempt of the Decree along with the defendant signatories.

At the outset, it should be noted that it is not clear to the Court that Rule 14 is the appropriate vehicle for joinder in a Rule 70 contempt proceeding. However, the more important issue is whether or not Third-Party Defendants had privity with the signatories, and it is to this issue which the Court now turns.

■ It is well-settled that a party cannot be bound by a consent decree to which it was not a party, and, consequently, cannot be held in contempt for the performance of acts prohibited by the decree. Third-Party Plaintiffs, in seeking to demonstrate that Third-Party Defendants were parties to the Decree, argue that, through letters of assent,[2] to which Third-Party Defendants agreed to abide by the terms of collective bargaining agreements, they agreed to be bound by the terms of the Consent Decree as well. This position is buttressed by the fact that, after entry of the Consent Decree, JAC notified all contractors which had executed letters of assent. However, the tone of the letter sent to one outside contractor (attached hereto

as Exhibit "B") clearly indicates that JAC was completely aware that it and not other unnamed parties were bound by the Decree. Indeed, the first sentence reads, "We solicit your cooperation . . ." This is followed by, "We are presently operating under the provisions of 'Consent Decree' . . ." Surely such language would be unnecessary if, as Third-Party Plaintiffs now contend, the outside contractors were also bound. Third-Party Plaintiffs argue that "fairness and social interest" warrant the joining of the "outside" contractors. However, the Court cannot accept the proposition that the mere signing of letters of assent to a collective bargaining agreement is sufficient to hold the signers accountable under the terms of a four year-old consent decree to which they were not parties. The relationship between the local, or in some cases the international, and the "outside" contractors is inadequate to make the contractors liable.

■ The Supreme Court stated in *Chase National Bank v. City of Norwalk*, 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894 (1934), that it would be error ". . . to make punishable as a contempt the conduct of persons who act independently and whose rights have not been adjudged according to law." 291 U.S. at 437, 54 S.Ct. at 477. See also, *Zenith Corp. v. Hazeltine*, 395 U.S. 100, 112, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1968). This rule of law applies to employment discrimination cases. See *Rodriguez v. East Texas Motor Freight*, 505 F.2d 40, 65 (C.5, 1975), where it was stated, "A judgment by consent binds the parties and those in privity with them." Privity exists when a party, with notice of the decree, is in active concert with a named party in violating the terms of the decree. Mere knowledge of the existence of the consent decree is insufficient to establish privity. *Zenith Corp. v. Hazeltine*. Likewise, the mere doing of the prohibited act is not grounds for contempt. "[I]t is not the act described which the

---

considered insofar as these motions are concerned, are the "outside" contractors.

**2.** Not all parties impleaded have even signed letters of assent; a list of those who have and

those who have not is appended as Exhibit "A". Also attached to Exhibit "A" is a typical letter of assent.

decree may forbid, but only that act when the defendant does it." *Alemite Manufacturing Corp. v. Staff*, 42 F.2d 832, 833 (C.2, 1930). Some degree of active participation with a signatory must be shown in order to establish privity. The mere showing of a common interest is not enough. *Heyman v. Kline*, 444 F.2d 65 (C.2, 1971). Considering the facts of this case and considering that none of are "outside" contractors were signatories to the Consent Decree, it cannot be said that sufficient privity exists to warrant requiring these contractors to defend themselves in an action to which they took no part. Third-Party Plaintiffs contend that the "outside" contractors will all have a chance to defend themselves at the contempt proceeding. However, the point is that they should not be put in the position of having to defend themselves for contempt when they were not parties to the Decree. The Justice Department, in 1971 when it instituted this suit, could easily have named these Third-Party Defendants. It chose not to do so because it felt that the named defendants were responsible for the hiring policies in force in the area in question. Defendants could, at any time up to the entry of the Consent Decree, have third-partied the "outside" contractors. However, they, too, felt that it was unnecessary. Both parties now come into court some four years after entry of judgment and over five years since the filing of suit and seek to hold these small independent contractors liable for the alleged wrongs of the primary defendants. If these Third-Party Defendants have indeed violated the law, the E.E.O.C.'s recourse is to file suit against them directly, not to seek to hold them to the terms of a consent decree which they were not parties and to which the E.E.O.C. admitted that they were not privies to. Likewise, the NECA, IBEW,

and JAC should not be permitted to maintain an action against these parties for any liability which the primary defendants should incur on the ground that "justice so requires". Privity must be demonstrated, and the Court cannot on the basis of letters of assent to a collective bargaining agreement hold that Third-Party Defendants were in privity with Third-Party Plaintiffs in so far as the consent decree is concerned.

Justice requires that the Third-Party Defendants be given the opportunity to defend themselves in connection with any discriminatory acts which they are alleged to have committed in a new proceeding and not be thrust into a five-year old case and faced with the immediate prospect of a substantial financial judgment against them for the failure of the JAC, IBEW and NECA to abide by the Consent Decree. The Third-Party Defendants in this case merely employed whoever was referred to them. Additionally, the letter allegedly sent to the "outside" contractors by JAC indicates that in December, 1973, the Third-Party Defendants were not considered to be parties or privies to the Consent Decree. The Court feels that the same reasoning applies now, and, therefore, IT IS ORDERED that the various motions to dismiss for failure to state a claim, filed by the various Third-Party Defendants, be, and the same are hereby, GRANTED.

### PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff originally sought, under Rule 15, to amend its complaint in order to bring in the "outside" contractors as well as the individual members of NECA. The Court, on April 28, 1976, denied Plaintiff's motion for leave to amend on the grounds that Rule 15 did not permit the amendment which Plaintiff sought[3] and that the E.E.

---

**3.** Nowhere in the plaintiff's memorandum in support of the motion to amend is joinder under Rule 19 mentioned. However, the plaintiff chose to assert this new ground in its motion for reconsideration. Although Rule 19 permits joinder of parties needed for just adjudication, the mechanics of joinder must still be in compliance with Rule 15. Moreover, the E. E. O. C.

is free to institute fresh proceedings against the outside contractors and, in that way, meet the ends of justice.

Additionally, it would appear that reliance upon Rule 19 is hardly proper in light of the fact that when this action was instituted in 1971, no motion to dismiss was made under Rule 12(b)(7) which permits a motion to dis-

O.C. failed to exhaust its own administrative remedies.

Concerning compliance with the Federal Rules, Rule 15 governs this matter and is, therefore, set out in its entirety.

### Rule 15.

*Amended and Supplemental Pleadings*

(a) *Amendments.* A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

(b) *Amendments to Conform to the Evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and

the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

(c) *Relation Back of Amendments.* Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

The delivery or mailing of process to the United States Attorney, or his designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of clauses (1) and (2) hereof with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

(d) *Supplemental Pleadings.* Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to

---

miss for failure to join a party under Rule 19. Thus, the absence of any such Rule 12 motion

buttresses the Court's opinion as to liability of the outside contractors.

be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

As amended Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966.

Plaintiffs, in support of their motion for leave to amend, argue that justice required the amendment and that Third-Party Defendants would not be prejudiced by the granting of leave to amend. However, this is not the usual case in which a party is joined and discovery then proceeds and the case is ultimately tried. Rather, Plaintiff seeks to add these individual defendants and hold them accountable for a four year-old consent decree to which they were not parties and by which they are not bound. Third-Party Defendants would not, contrary to the E.E.O.C.'s position, "have the opportunity to answer and defend to such an amendment".

█ Moreover, Rule 15(a) does not purport to allow amendments "even after judgment". Plaintiff seeks to discount this language by asserting that the Court retained jurisdiction over this matter and therefore, no "final" judgment was entered. This argument ignores the fact that a "judgment" was indeed entered insofar as they now seek to hold non-signatory third parties accountable to its terms.

Although Rule 15(b) does speak of post-judgment amendments in order to obtain conformity with the evidence, it cannot be said that the issue of liability as to the various outside contractors was "tried by the express or implied consent of the parties." See 6, Wright & Miller, *Federal Practice & Procedure*, § 1494, wherein it is stated,

"But if the issue in fact has not been tried with the consent of the parties, then an amendment to conform to the pleadings will not be permitted no matter when made."

Additionally, neither Rule 15(c), permitting the relation back of amendments, nor Rule 15(d), permitting supplemental amendments, is applicable in a post-judgment situation. See 6, Wright & Miller, *Federal Practice & Procedure*, § 1489:

"1489. Amendments after Judgment and Appeal

Although Rule 15(a) vests the district judge with virtually unlimited discretion to allow amendments by stating that leave to amend may be granted when 'justice so requires', there is a question concerning the extent of this power once a judgment has been entered or an appeal has been taken. Most courts faced with the problem have held that once a judgment is entered the filing of an amendment cannot be allowed until the judgment is set aside or vacated under Rule 59 or Rule 60. The party may move to alter or amend the judgment within ten days after its entry under Rule 59(e) or, if the motion is made after that ten day period has expired, it must be made under the provisions in Rule 60(b) for relief from a judgment or order. This approach appears sound. To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation."

█ The Court also denied the motion for leave to amend on the grounds that the E.E.O.C. failed to comply with its own procedural rules. Under 42 U.S.C. § 2000e–5, the E.E.O.C. is required to give notice of a charge, investigate the charge, determine reasonableness, and attempt conciliation prior to filing suit. See also, 29 C.F.R. § 1601 et seq. As the Eighth Circuit stated in *E.E.O.C. v. Hickey-Mitchell Co.*, 507 F.2d 944, 947, 948 (C.8, 1974),

". . . [T]he Act expressly conditions the Commission's powers of suit on its 'inability to' secure from the respondent a conciliation agreement acceptable to the Commission."

The Court further stated,

". . . it is beyond dispute that a Commission lawsuit brought before any attempt at conciliation is premature."

See also, *E.E.O.C. v. U.S. Pipe & Foundry Co.,* 375 F.Supp. 237 (D.C.Ala., 1974); *E.E.O.C. v. Airguide Corp.,* 395 F.Supp. 600 (D.C.Fla., 1975); *E.E.O.C. v. King's Daughters Hospital,* 12 FEP 484 (D.C.Miss., 1976).

Plaintiff, in its motion for reconsideration, relies principally on the case of *E.E.O.C. v. Longshoreman (ILA) Locals 829 and 858,* 9 E.P.D. 7709, 10 FEP 551 (D.Md., 1975), which, on first reading, appears to be closely analogous to the present case. However, a closer reading indicates significant differences which make the two cases distinguishable.

*E.E.O.C. v. ILA* was only one of several reported cases dealing with the same basic fact situation. See, 319 F.Supp. 737 (D.Md., 1970); aff'd 460 F.2d 497 (C.4, 1972) cert. den. 409 U.S. 1007, 93 S.Ct. 439, 34 L.Ed.2d 300 (1972); see also the related case of *McFadden v. Baltimore Steamship Trade Association,* 352 F.Supp. 403 (D.Md., 1973). Thus, by 1975, the trial judge in that case was fully aware of the identity of all the potential parties and their activities. Moreover, the trade association in that case (STA) represented all stevedoring companies in the area, unlike the instant case, in which the "outside" contractors, in whose favor the Court rules, are not represented by any trade association. Another distinction is that in *ILA,* the E.E.O.C. was not seeking monetary damages from the STA. In the present case, the E.E.O.C. is seeking to apportion over $450,000 in damages.

It should also be noted that, insofar as it can be gleaned from the *ILA* decision, the Court in that case was not presented with the issue of propriety of impleader under

Rule 14 or the amendment of a complaint under Rule 15. Thus, clearly as to these two issues that case is not controlling.

The trial judge in *ILA* appeared to be satisfied that the essential elements for holding a non-party in contempt were prima facie present. In this case, the Court has stated that notification of the Consent Decree was not sufficient. Indeed, to this date, certain third party defendants have not seen a copy of the Consent Decree itself. Moreover, although the E.E.O.C. contends that the use of the referral procedure is itself "active concert", this argument ignores the reality of the fact that these small independent electrical contractors, some of whom employ no more than three to five individuals, were not in a position to bargain with the union as to who they got, but rather, they accepted whoever was referred to them.

*E.E.O.C. v. ILA* placed great reliance on the case of *U. S. v. Hall,* 472 F.2d 261, 265 (C.5, 1972), in which the Fifth Circuit stated,

"Courts of equity have inherent jurisdiction to preserve their ability to render judgment in a case such as this."

*U. S. v. Hall,* involving school desegregation, dealt with an individual, who, with direct knowledge of a Court's order, chose deliberately to disregard the order. The Court cannot argue with the proposition that Courts of equity do, indeed, have inherent power to effectuate their orders; however, *Hall* involved an instance of willful and knowing disregard of a judicial declaration. As noted earlier, the instant case involves parties who did not receive requisite notice and were not acting in active concert with the signatories to the Consent Decree.

Finally, Plaintiff contends that under Section 707 of Title VII (42 U.S.C. § 2000e–6(d)), it is not required administratively to process actions in which it was substituted for the United States. The pertinent section states,

"Transfer of functions, etc., not to affect suits commenced pursuant to this section prior to date of transfer.

(d) Upon the transfer of functions provided for in subsection (c) of this section, in all suits commenced pursuant to this section prior to the date of such transfer, proceedings shall continue without abatement, all court orders and decrees shall remain in effect, and the Commission shall be substituted as a party for the United States of America, the Attorney General, or the Acting Attorney General, as appropriate."

*E.E.O.C. v. ILA,* relying on the case of *E.E.O.C. v. Plumbing Local 189,* 438 F.2d 408 (C.6, 1971), held there was no need for the plaintiff to exhaust its administrative remedies against the STA. However, *E.E.O.C. v. Plumbing Local 189* did not involve the addition of new parties to an action in which a judgment had previously been entered. To that extent, reliance upon *E.E.O.C. v. Plumbing Local 189* is misplaced in the instant situation. Although the language of Section 707 is clear and, in the usual instance of substitution, would be proper, this case is by no means the usual instance. The establishment of the Equal Employment Opportunity Commission represented a Congressional desire to establish an administrative agency to investigate allegations of discrimination. Section 707 merely provides that in ongoing litigation the E.E.O.C. was to be substituted for the United States. It does not indicate that the E.E.O.C. is absolved of its administrative obligations insofar as the addition of new parties after judgment is concerned. To permit otherwise would be to deny these "outside" contractors their rights to administrative process. These parties were not signatories to the Consent Decree, and the question of their violation of the Civil Rights Act has never been administratively or judicially determined.

Considering the foregoing, IT IS ORDERED that the Plaintiff's motion for leave to file a third-party complaint be, and the same is hereby, DENIED.

## APPENDIX

### THIRD–PARTY DEFENDANTS WHICH HAVE EXECUTED "LETTER OF ASSENT"

1. Bode Electric Company, Inc.
2. Chauvin Electric Company, Inc.
3. Compagno Electric, Inc.
4. R. P. Defourneaux Electrical Contractor.
5. Frederick Elliott, Jr. Corporation.
6. Southern Instruments, Inc.
7. Newtron, Inc.
8. Bill Roberts, Inc.
9. Robinson Electrical Company, Inc.
10. Seaboard Electric Company, Inc.
11. W. H. Bower Spangenberg, Inc.
12. Technical Electric Inc.
13. Veterans Electric Service, Inc.
14. Weisfeld & Son, Inc.
   FRD 292-1

### THIRD–PARTY DEFENDANTS WHICH HAVE NOT EXECUTED "LETTER OF ASSENT"

1. A–1 Signs, Inc.
2. American Assets, Inc.
3. Bonded Lightning Protection of Louisiana, Inc.
4. Ebasco Services, Inc.
5. R. K. Goode Company, Inc.
6. Gulf Lightning Protection Company, Inc.
7. Honeywell, Inc.
8. Indelec, Inc.
9. Johnson Controls, Inc.
10. Pullman Incorporated
11. Lamar Dean Outdoor Advertising Company of New Orleans, Inc.
12. Neon Sign Corporation
13. E. J. Hull Electric Company, Inc.
14. The Lummus Company
15. The Ralph M. Parsons Company
16. Jackson Brewing Company.

## EXHIBIT "A"

### LETTER OF ASSENT—A

In signing this letter of assent, the undersigned firm does hereby authorize [1] _The South Louisiana Chapter, Inc., N.E.C.A._ as its collective bargaining representative for all matters contained in or pertaining to the current approved [2] _Inside Agreement_ labor agreement between the [3] _South Louisiana Chapter, Inc., N.E.C.A._

and Local Union [3] _130_, IBEW. This authorization, in compliance with the current approved labor agreement, shall become effective on the [4] ____ day of ___AUG 14 1973___. It shall remain in effect until terminated by the undersigned employer giving written notice to the [3] _South Louisiana Chapter, Inc., N.E.C.A._ and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the aforementioned approved labor agreement.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

**APPROVED**

SEP 25 1973

INTERNATIONAL OFFICE — I. B. E. W.

_Charles H. Pillard_ President

**NAME OF FIRM**

_W.H. Spangenberg, INC._

1010 Central (print or type) Avenue
Metairie, Louisiana

SIGNED FOR THE EMPLOYER

BY _(original signature)_

TITLE _PRESIDENT_

DATE _Aug. 14, 1973._

SIGNED FOR LOCAL UNION [3] _130_, IBEW

BY _Michael J. (original signature) Emig_

TITLE _Business Manager_

DATE ___AUG 14 1973___

### INSTRUCTIONS

[1] **NAME OF CHAPTER OR ASSOCIATION**

Insert full name of NECA Chapter or Contractors Association involved.

[2] **TYPE OF AGREEMENT**

Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.

**LOCAL UNION**

Insert Local Union Number.

[4] **EFFECTIVE DATE**

Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5] **EMPLOYERS' NAME**

Print or type Company name.

[6] **SIGNATURES**

International Office copy must contain actual signatures—not reproduced—of a Company representative as well as a Local Union officer.

MINIMUM OF FOUR COPIES OF THIS JOINTLY SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING.

IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form; the image will transfer to succeeding copies. CAUTION: do not write on padded forms; unused forms below will be spoiled.

IBEW FORM 302

EXHIBIT "B"

*New Orleans Electrical Joint Apprenticeship Committee*

1600 CANAL STREET        NEW ORLEANS, LA. 70113

December 18, 1973

Dear Sir(s):

We solicit your cooperation toward the employment of Apprentices.

We are presently operating under the provisions of a "Consent Decree" which dictates that the JAC and the defendant NECA shall use all reasonable means to provide black apprentices not less than 2,000 hours per year of reasonably continuous employment.

For the past several months, calls from employers for apprentices have not afforded sufficient job opportunities to significantly reduce the number of unemployed indentured apprentices.

The "Decree" dictates the number of apprentices to be indentured each year and also provides means to accomplish employment opportunities if necessary. In respect to the latter statement we quote as follows:

> "Apprentices shall be allocated to contractors by the JAC in accordance with procedures which it shall adopt."

It is the considered opinion of the Joint Apprenticeship Committee that unemployment will be substantially reduced if Employers will call for and employ apprentices in accordance with the current Apprentice/Journeyman ratio.

Yours sincerely,

NEW ORLEANS ELECTRICAL JOINT
APPRENTICESHIP COMMITTEE

J. W. Ayres, Director

JWA/do