Ralph SCHAUSS, et al.,
Plaintiffs-Appellees,

v.

METALS DEPOSITORY
CORPORATION, et al.,
Defendants,

Michael Wagner, Equity Receiver of U.S. Metals Depository Corporation,
Defendant-Appellant,

FIRST NATIONAL BANK OF EULESS,
Plaintiff-Appellee,

v.

Ralph SCHAUSS, et al.,
Defendants-Appellees,

v.

Michael WAGNER, etc.
Defendant-Appellant.

No. 84–1398.

United States Court of Appeals,
Fifth Circuit.

April 15, 1985.

650

Thomas S. Leatherbury, Dallas, Tex., Leon, Weill & Mahony, New York City, for defendant-appellant.

John E. Collins, Garnett E. Hendrix, Jr., Dallas, Tex., for Schauss.

Wm. C. Meier, Peter H. Fulton, Hurst, Tex., for First Nat. Bank.

Alan Leibel, Dallas, Tex., for Mabry.

Before BROWN, WILLIAMS, and GAR-WOOD, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

In this appeal, we are asked to vacate a district court judgment on the basis of a motion to vacate made almost two years after judgment was entered. We decide that respect for the injunctive power of a sister federal court requires that appellant's request be granted, and accordingly, reverse in part and remand.

### Background and Case History

Defendant Metals Depository Corporation (MDC) was involved in the business of buying and selling precious metals. The first Texas case (C.A. # 4–79–95), in which MDC was sued by a customer in the United States District Court for the Northern District of Texas, was filed on March 5, 1979. Joined as garnishee in this action was the First National Bank of Euless (the bank), a Texas bank holding deposits for MDC. Within a few weeks, several other actions were filed in Texas state courts naming the bank as garnishee for debts allegedly owed by MDC.

MDC's troubles were not confined to Texas, however, for on March 7, 1979, the Commodity Futures Trading Commission (CFTC) brought suit against MDC in the U.S. District Court for the Southern District of New York alleging violations of the Commodity Exchange Act, 7 U.S.C. §§ 1, *et seq.* (1980). On April 11, the CFTC secured a judgment against MDC which, *inter alia,* enjoined MDC from further fraudulent transactions or violations of commodities laws. As part of this judgment, the court appointed Michael Wagner as receiver of all assets and property of MDC.

In order to provide all creditors an equal opportunity to assert their claims against MDC, the New York court entered an order on April 24, 1979, enjoining all creditors, customers and stockholders of MDC from "instituting, commencing, prosecuting, or continuing the prosecution of any action, suit or proceeding, whether in law or equity, against [MDC]...." The very next day, April 25, counsel for the receiver sent, by registered mail, to the Clerk of the Court for the Northern District of Texas, copies of the New York District Court complaint, order appointing receiver, and order staying further proceedings.[1] Understandably, however, these papers were sent to

---

1. By so doing, the receiver undertook to retain control over the funds located in Fort Worth through the mechanism provided in 28 U.S.C. § 754 (1976):

   **§ 754. Receivers of property in different districts**

   A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

   He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.

   Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

   The receiver having been appointed on April 11, however, the filing was made after the ten-day period prescribed by the statute, although notice was sent within one day of entry of the injunction.

the official station of the Clerk's Office in Dallas, rather than Fort Worth where the other action against MDC was pending.

In May of 1979, the second Texas case was initiated (C.A. # 4–79–177K) in which the bank filed, in the district court at Fort Worth, a complaint in interpleader under F.R.Civ.P. 22 joining all parties claiming an interest in MDC's Texas bank account, and seeking a determination of the proper disposition of those funds. The District Court judge in Fort Worth, having learned of the New York injunction from one of the parties in the interpleader action, entered an order on June 8 staying the interpleader action "for the purpose of ascertaining the effect, if any," the New York injunction had on the Fort Worth proceedings.

Over a year passed before the two Fort Worth actions were consolidated by order of October 21, 1980. In the interim, however, counsel for the various parties corresponded with each other and with the court. While the receiver never formally responded to the complaint in interpleader naming him as a party, the record reveals that he was well aware of the Fort Worth proceedings. Letters between receiver's counsel and counsel for the other parties in the interpleader action indicate that the receiver's strategy was to stay out of the Fort Worth action, with the expectation or hope that the interpleaded fund in Texas would be transferred to the escrow account maintained by the receiver in the New York action.

On August 3, 1981, all parties in the consolidated Fort Worth action, except the receiver, participated in a hearing in the Fort Worth district court.[2] At that hearing, the parties seeking distribution of the funds in MDC's interpleaded Texas bank account presented the court with a mutually agreed upon judgment proposal disposing of the interpleaded funds. During that hearing, the district court sought to determine the status of the injunction in the New York action. One of the parties had recently contacted the Clerk of the Court for the New York district court and had been informed that the injunction was still pending. However, that party, based on misinformation or misunderstanding, erroneously informed the Texas court that the docket sheet in the New York suit indicated that no action had been taken in the case in over two years, and that the case had in fact been dismissed.[3] Based on this information, and the fact that the receiver had not formally responded to or formally entered an appearance in the Fort Worth action, the district court entered judgment as requested by the parties.[4]

In May of 1983, almost two years after entry of judgment and disbursement of all funds, counsel for the receiver, citing F.R. Civ.P. 60(b)[5], moved to set aside the Au-

---

**2.** The docket sheet from the Fort Worth action indicates that a letter setting a non-jury trial for this date was sent to all attorneys of record on July 1, 1981. As described *infra*, n. 7 and accompanying text, however, counsel for the receiver apparently did not receive this letter as his affidavits indicate that he did not receive notice of the August 1981 proceedings until February, 1983.

**3.** In fact, the injunction in New York remained in effect. The docket sheet entry relied on at the hearing merely indicated that an appeal from the order entering the injunction itself had been dismissed for failure to prosecute.

**4.** The funds held by the bank were split among the Texas claimants in the interpleader action. Additionally, the bank was awarded $3,100 in attorneys' fees, as permitted in the trial court's discretion under F.R.Civ.P. 22. *See, e.g. Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359 (5th Cir.1983).

**5.** Rule 60(b):
> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The

gust, 1981 judgment on the grounds that it had been entered without prior notice to the receiver, and that it was in violation of both the New York injunction and 28 U.S.C. § 754, governing disposition of assets in various districts in receivership actions.[6] Counsel's motion alleged that the receiver did not learn of the entry of judgment until February of 1983, and that in several phone calls to the Fort Worth court, both before and after entry of judgment, he had been assured that the action in Fort Worth remained stayed pursuant to the Fort Worth court's June 1979 order enjoining those proceedings.[7] Receiver appeals the district court's refusal to vacate the judgment.

### Injunction Malfunction

■ Where, as here, a party appeals a district court's denial of a Rule 60(b) motion, we review the district court's determination only to see whether it constitutes an abuse of discretion. *Hand v. United States*, 441 F.2d 529, 531 (5th Cir.1971). However, a final judgment may be vacated where appropriate to accomplish justice. *United States v. Nolder*, 749 F.2d 1128 (5th Cir.1984). We believe that such a case is presented here.

Clearly, appellant's predicament is due in large part to his own failure to deal affirmatively with the Fort Worth actions. Instead of formally participating in the inter-pleader action, or entering a limited appearance for the purpose of informing the court of the existence, effect and continuance of the New York injunction, receiver's counsel chose a course of limited contact with the Fort Worth court and the parties. This strategy contributed significantly to the confusion confronting the judge below when called upon to enter the judgment agreed on by the other parties.

■ Nevertheless, we believe the judgment was improvidently entered in light of the existing and then valid and operative injunction of the New York district court. This court recently addressed the effect of an order of one district court enjoining the prosecution of similar claims in other courts. In *United States v. Nolder*, 749 F.2d 1128 (5th Cir.1984), we vacated a judgment of the district court for the Northern District of Texas where the district court for the District of North Dakota had previously enjoined the Secretary of Agriculture from proceeding against a national class of which appellant there was a member. In so doing, we observed that respect for the order of a sister federal court serves the important function of avoiding duplicative litigation.

■ While *Nolder* involved the additional issue of insuring the integrity of nationally certified classes under F.R.Civ.P. 23,

---

motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

6. *See supra,* footnote 1.

7. In an affidavit in support of the motion to vacate judgment, one of the attorneys who represented the receiver during this time outlined the basis for his belief that the Fort Worth action remained stayed. According to this affidavit, receiver's counsel made several calls to the chambers of the Fort Worth district judge prior to the August, 1981 hearing. In conversations with the law clerk to the Fort Worth judge, counsel apparently was never informed of the hearing to take place in August in Fort Worth. The affidavit states that similar calls were made in August or September of 1981, as well as in August of 1982, one year after entry of judgment. In these calls, described as being made "to chambers" without stating who was spoken to, counsel asserts that he was assured that the Fort Worth action remained dormant. It was during a phone call "to chambers" in February 1983, that counsel apparently first learned of the August 1981 judgment.

we believe a similar result is dictated here. A United States District Court hearing a particular case may, in its discretion, enjoin the filing of related lawsuits in other federal courts. *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Company,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). This Circuit has also recognized that, in certain cases, such an injunction may be effective against non-parties, as well as parties to the initial action. *United States v. Hall,* 472 F.2d 261 (5th Cir.1972) (approving desegregation order prohibiting "all persons" from taking certain actions and providing for criminal contempt sanctions against "anyone having notice of this order").

■ Moreover, the important principle of comity between federal courts is advanced where courts of coordinate rank are respectful of each other's orders, as well as careful to avoid hindering each other's proceedings. In this vein, we have long advocated that district courts exercise their discretion to avoid duplication of proceedings where related claims are being litigated in different districts. *See, e.g., Mann Manufacturing, Inc. v. Hortex, Inc.,* 439 F.2d 403 (5th Cir.1971) (court with prior jurisdiction over common subject matter may best

resolve all issues presented in related actions).[8]

Finally, several courts have recognized the importance of preserving a receivership court's ability to issue orders preventing interference with its administration of the receivership property. In both securities fraud cases, *see, e.g., Securities and Exchange Commission v. Wencke,* 622 F.2d 1363 (2d Cir.1980), and bankruptcy proceedings, *see, e.g., Diners Club, Inc. v. Bumb,* 421 F.2d 396 (9th Cir.1970), Courts of Appeals have upheld orders enjoining broad classes of individuals from taking any action regarding receivership property. Such orders can serve as an important tool permitting a district court to prevent dissipation of property or assets subject to multiple claims in various locales, as well as preventing "piecemeal resolution of issues that call for a uniform result." *West Gulf Maritime Assoc. v. ILA Deep Sea Local 24,* 751 F.2d 721, 729 (5th Cir.1985).[9]

■ Having concluded that judgment was improperly entered,[10] the question remains whether we may properly vacate the judgment, where funds under the judgment have already been disbursed, and appellant

---

**8.** We most recently discussed the concept of comity between federal district courts in *West Gulf Maritime Assoc. v. ILA Deep Sea Local 24,* 751 F.2d 721 (5th Cir.1985), a case quite similar to the one at bar. In that case, we vacated an injunction entered by the District Court for the Southern District of Texas in light of a previously filed action in a New York Federal District Court involving the same issues. While that decision was based in large part on the "first to file" rule of the *Mann* case cited in text, its discussion of the principles of comity between federal courts is highly relevant here.

Nor does the "first to file" concept require a different result than the one we reach today. It is true that the first of the Texas cases involved here was filed two days before the New York action. However, that case was ultimately consolidated with the federal interpleader action which was handled by a different federal judge, and was filed well after entry of the injunction in the New York action. More important, the district court in the interpleader action had previously stayed these proceedings in light of the New York injunction. We would exalt the first to file rule over the very principles supporting

it, were we to decide that a federal court, having stayed its hand in light of proceedings existing elsewhere, should be free to act in disregard of those proceedings and an outstanding injunction, merely because of the subsequent consolidation of an earlier filed claim.

**9.** While we conclude that the New York injunction should have been respected, fairness to the court below requires us to observe that, had the parties given the court correct information at the hearing on the judgment, the present appeal may never have arisen. As previously discussed, the parties erroneously read an entry on the docket sheet from the New York action as vacating the New York injunction itself. So misinformed, the trial judge understandably felt no constraints in entering the judgments which we today set aside.

**10.** Thus, we need not consider appellant's arguments that the ten day time limit of 28 U.S.C. § 754 not be strictly construed, *see Securities and Exchange Commission v. Equity Service Corp.,* 632 F.2d 1092 (3d Cir.1980), or that he was entitled to notice under F.R.Civ.P. 55(b)(2) or F.R.Civ.P. 77(d).

has waited nearly two years to challenge the judgment. We conclude that we may.

■ While motions under the first three sections of Rule 60(b) must be made within one year from entry of judgment, motions under Rule 60(b)(6) (any other reason justifying relief from the judgment), may be made "within a reasonable time." *United States v. 119.67 Acres of Land*, 663 F.2d 1328, 1331 (5th Cir.1981). In *Menier v. United States*, 405 F.2d 245 (5th Cir.1968), we vacated a default judgment on a motion made over two years after entry, stating:

> "In simple English, the language of the 'other reason' clause [sub-section (6)], for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1948). The broad language of clause (6) gives the court ample power to vacate judgments whenever such action is appropriate to accomplish justice. *L.M. Leathers' Sons v. Goldman*, 252 F.2d 188 (6th Cir.1958); 3 Barron & Holtzoff, Federal Practice & Procedure, § 1329 (Wright ed. 1958.) "[C]lause (6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses." 7 Moore, supra, ¶ 60.27[3], at 308. This court has recognized and implemented wide equitable force and effect for Rule 60(b)(6). *Bros., Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594 (5th Cir.1963); *Laguna Royalty Co. v. Marsh*, 350 F.2d 817 (5th Cir.1965).

*Id.* at 248.

■ Given the importance of preserving the properly-invoked injunctive power of the federal courts, we believe such compelling considerations are shown here. Thus, to the extent that the district court judgment permitted disbursement of the interpleaded funds to the parties below, the judgment is set aside, and the district court is directed to order these funds to be paid back into the registry of the court and take such further action as is both appropriate and consistent with this opinion. However, to the extent that the district court below, in its discretion, determined that an award of attorneys' fees to the disinterested stakeholder (the bank) was appropriate in this interpleader action under F.R.Civ.P. 22, the judgment below is affirmed, *see Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359, 364–65 (5th Cir.1983).

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED FOR ORDERS CONSISTENT WITH THIS OPINION.

GARWOOD, Circuit Judge, dissenting:

I am unable to agree that the district court abused its discretion by denying relief under Fed.R.Civ.P. 60(b)(6). The majority recognizes that the appropriate thing for appellant to have done was to assert the injunction in the Fort Worth proceedings. Appellant likewise recognizes this, urging that if it had had Fed.R.Civ.P. 55(b)(2) notice of the August 1981 hearing, it would have "[m]ost assuredly" appeared and asserted the New York injunction, and that accordingly the failure to notify it "presents an aggravated situation of a litigant being deprived of an opportunity to be heard." However, appellant, though duly served with process in the Fort Worth action, and being well aware of it, nevertheless intentionally made no appearance therein. As the majority correctly notes, appellant's "strategy was to stay out of the Fort Worth action." *

---

\* Hence, appellant cannot take advantage of the "informal" appearance doctrine, inasmuch as it never intended to appear in the Fort Worth action. Thus, appellant's reliance on *Charlton L. Davis & Co. P.C. v. Fedder Data Center, Inc.*, 556 F.2d 308 (5th Cir.1977), is misplaced. Indeed, appellant's counsel informed appellees' counsel in essence that appellant did not intend to appear. Since appellant neither formally nor informally appeared, though properly served with process, it was not entitled to Rule 55(b)(2) notice. *Baez v. S.S. Kresge Co.*, 518 F.2d 349 (5th Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Further, since appellant was a party "in default for failure to appear," it was not entitled to notice of the judgment pursuant to Fed.R.Civ.P. 77(d).

Despite all this, the majority holds that the district court abused its admitted discretion in denying appellant Rule 60(b)(6) relief first sought nearly two years after the judgment, and nearly four years after appellant learned of the Fort Worth suit. In this connection, the majority relies primarily on *United States v. Nolder,* 749 F.2d 1128 (5th Cir.1984), and *United States v. Hall,* 472 F.2d 261 (5th Cir.1972). These decisions are admittedly not directly applicable, and I would not extend them to the present case. Orderly procedure requires that one in appellant's position assert his rights in the suit to which he has been made a party, rather than simply ignoring that proceeding on account of an injunction issued by another court in another proceeding to which his adversaries in the former are not parties. We substantially undermine the finality of the Fort Worth decree in deference to the earlier injunction in the New York proceedings to which appellees were not parties. But the New York injunction was not a brooding omnipresence in the sky which deprived the Fort Worth court of either personal or subject matter jurisdiction. I regret this step, however small, toward giving court injunctive decrees something like legislative effect.

Putting aside the argument from *Nolder* and *Hall,* I do not see this as an appropriate case for Rule 60(b)(6) relief, because, "although worded quite broadly, Rule 60(b)(6) is generally reserved for situations showing compelling or aggravated circumstances involving extreme hardship and injustice which do not appear in this case." *McDonald v. Oliver,* 642 F.2d 169, 171–72 (5th Cir.1981). The result here unduly impinges on the principle of finality. Accordingly, I respectfully dissent.