David LAZZELL, et al.,
Plaintiffs-Appellees,

v.

BOOKER DRILLING CO., INC.,
Defendant-Appellant.

No. 86–4313.

United States Court of Appeals,
Fifth Circuit.

May 7, 1987.

Wood Brown, III, New Orleans, La., for defendant-appellant.

Lawrence N. Curtis, J. Minos Simon, Ltd., Lafayette, La., for Lazzell.

Before RUBIN, RANDALL, and JOHNSON, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The issue is whether, under Louisiana tort law, a company that had promised to help a non-employee wireline operator plug an offshore oil well is liable for injuries sustained by the operator when, after being refused assistance by the company's employees, he attempted alone to lift a 150 pound valve. Because the operator was acting in continued reliance upon the prom-

ise made, we affirm the judgment in the operator's favor.

## I.

On August 24, 1983, David Lazzell and a co-employee, Wayne Pellerin, were dispatched by their employer, Otis Engineering Corporation, to a fixed, offshore platform owned by Tenneco Oil Company. The platform was located on the outer continental shelf in the Gulf of Mexico, more than three miles from the Louisiana coast.

Otis Engineering, an oilfield service company, provides wireline services to companies engaged in drilling for oil. Offshore wireline services are performed by crews that usually consist of two Otis employees, a skilled "operator" and a less skilled "helper." On this occasion, however, Otis dispatched two operators because a helper was not available.

The day after Lazzell and Pellerin arrived at the offshore platform, Tenneco officials decided to evacuate the platform because a potentially dangerous tropical storm was approaching. Before evacuation, it was necessary that the wireline crews plug certain wells in the field, and the threatening storm required that this be accomplished with utmost speed. To avoid the delay that would be involved in recruiting an additional wireline crew and transporting it to the platform, the Tenneco field foreman suggested that, because Lazzell and Pellerin were both operators, they be separated and assigned to different wells. Plugging a well could not be accomplished by one person. Representatives from Tenneco and Booker Drilling Company, Inc., the contractor working on the platform to which Lazzell was to be assigned, therefore assured Lazzell that Booker employees would provide him all of the help he needed to plug the well. Accepting their assurances, Lazzell agreed to the arrangement.

The jury was justified in finding, from the evidence presented, that the situation Lazzell faced when he arrived at the platform contrasted starkly with what he had been led to expect. Despite Booker's and Tenneco's orders to provide him with whatever assistance he requested, Lazzell experienced extreme difficulty getting any help. In order to get assistance, he was required to make repeated requests and interrupt his work to track down the men who were supposed to be helping him. Moreover, Booker employees who reluctantly provided him assistance on one chore would disappear as soon as that task was completed.

Eventually, it became necessary for Lazzell to install a wireline valve that weighed approximately 150 pounds and had been stored under fixed pipes in an area inaccessible by crane. It was, therefore, necessary to remove the valve from the storage area and to carry it to a place in which it could be lifted for placement by a mechanical device, the catline. Lazzell testified that he again made numerous attempts to secure help from Booker employees. While he was working on the well plug, he asked two or three Booker employees at different times to get the wireline valve for him, but no one responded. He testified that he then complained to the person in charge of Booker's operations on the platform, but no action was taken to provide him with the help he needed. Finally, he returned to the valve and called out for help one more time. Still, no one responded. Faced with the exigency of plugging the well in time for evacuation of the platform before the storm, he decided to try to move the valve himself. Although he managed to slide the valve out from under the pipes without incident, when he attempted to lift it he felt a tremendous pain in his left leg and collapsed to his knees.

Medical testimony established that Lazzell suffered severe spinal injuries as a result of this effort. These injuries have left him in great pain and rendered him incapable of returning to work as a wireline operator. In an effort to recover damages for his injuries, he sued Booker Drilling, Otis Engineering, and Tenneco in federal district court. Shortly before trial, he reached a settlement with Otis Engineering and Tenneco. Booker Drilling, however, took its case to trial, and a verdict was rendered in favor of Lazzell and his wife for $611,000. Booker now appeals from judgment on that verdict.

## II.

Lazzell sought to establish that Booker was liable for his injuries under two tort theories: (1) Booker breached a duty it voluntarily assumed to provide adequate assistance and (2) Booker negligently placed the valve in a place inaccessible to the crane Lazzell was operating.

Louisiana has adopted the general tort rule that no one has a duty to go to the assistance of another, but, once a person voluntarily and gratuitously undertakes an obligation to assist someone, he must carry through on the obligation to its completion if the person being assisted relies on the proffered help.[1] Booker freely admits that it volunteered to provide Lazzell with all of the assistance he would need to plug the well. It contends, however, that it cannot be held liable for his injuries because its employees provided more assistance than Lazzell would have had under normal circumstances and because, by choosing to attempt to move the valve himself, Lazzell ceased to act in reliance upon Booker's promised aid. Neither argument convinces us that the jury verdict is not soundly based on Louisiana law.

All parties agree that, at some time before the accident, two or three Booker employees were helping Lazzell by assembling a lubricator on his wireline unit. They agree that Lazzell would usually have had the aid of only a single helper, assigned as part of the two-man Otis Engineering team. The parties disagree whether the Booker employees were still assembling the lubricator when Lazzell sought assistance with the valve or had finished that chore earlier and had left Lazzell's work area. Although the record amply supports Lazzell's contention that the workers had already finished work on the lubricator when he asked for help with the valve, the dispute is essentially immaterial. Lazzell was promised all of the help he would need before he agreed to work without his colleague, Pellerin. Had another Otis Engineering employee been present and working on the lubricator when Lazzell required help with the valve, that employee would have helped him when he asked. It is therefore irrelevant what help Lazzell was given with other tasks.

Similarly, it is a nonsequitur to assert that Lazzell was no longer relying on Booker's promise when, unable to secure help after repeated efforts, he elected to attempt to move the valve himself. Booker contends that its employees' actions clearly indicated that no aid would be forthcoming. It follows, Booker argues, that Lazzell could not have been relying on their aid when he attempted to move the valve alone. This argument misstates the scope of the promise Booker made and the nature of Lazzell's reliance. Informed that a potentially dangerous tropical storm was approaching, that wells needed to be plugged quickly, and that he would receive all of the help he needed if he agreed to be separated from his partner, Lazzell agreed to perform the plugging project without Pellerin. He relied on the fact that help would be provided for the entire project, not for whatever separate chores Booker's employees individually agreed to perform. Moreover, because the storm was approaching and it was necessary that he perform his work as quickly as possible, Lazzell was not in a position to abandon the job when it became apparent that Booker's promise would not be adequately fulfilled. He attempted to move the valve alone because he had no practical alternative.

## III.

Because the judgment in Lazzell's favor is properly sustained on the plaintiffs' first theory of recovery, we need not decide whether Booker's failure to place the valve in a place accessible to the crane Lazzell was operating would provide an independent basis for recovery.

For the reasons stated above, the judgment of the district court is AFFIRMED.

---

1. *See, e.g., Harris v. Pizza Hut of Louisiana, Inc.,* 455 So.2d 1364, 1371–72 (La.1984); *Dornak v. Lafayette Gen. Hosp.,* 399 So.2d 168, 170 (La. 1981); *Travelers Ins. Co. v. Ragan,* 202 So.2d 302, 304 (La.App.1967); *Oliver v. Illinois Central Railroad Co.,* 135 So.2d 521, 529 (La.App.1961).