**In re WOODHAVEN, LTD., Debtor.**

**Bankruptcy No. 89–07356.**

United States Bankruptcy Court,
N.D. Alabama, S.D.

March 31, 1992.

Debtors' plan.

André M. Toffel, Birmingham, Ala., for debtor.

W. Clark Watson, Birmingham, Ala., for New South Federal Sav. and Loan.

R. Charles Robb, Vicksburg, Miss., for Daniel Maner, Donald Maner, Robert Weigt, and Donald Jones.

Robert W. Shores, Birmingham, Ala., for Gerald Travis.

Luther M. Dorr, Jr., Birmingham, Ala., for Nat. Bank of Commerce.

## ORDER ON MOTION TO REOPEN

TAMARA O. MITCHELL, Bankruptcy Judge.

This cause is before the Court on a Motion to Reopen the Debtor's Chapter 11 case. The motion was filed by Daniel Maner, Donald Maner, Robert L. Weigt, three former limited partners of the Debtor, and W. Gerald Travis and Donald L. Jones, two limited partners of the Debtor. The partnership was formed under the Alabama Limited Partnership Act of 1983, Ala.Code §§ 10–9A–1 to 203 (1987), with the intent to acquire and operate a 76–unit apartment complex in Hueytown, Alabama.

The Debtor, acting through general partner Robert R. Maner, filed for protection under Chapter 11 of the Bankruptcy Code on June 1, 1989, 25 minutes before the scheduled foreclosure sale of the Debtor's main asset, a 76–unit apartment complex. Five days later, New South Federal Savings Bank (New South), the Debtor's largest secured creditor, filed an Emergency Motion for Relief From Stay and Adequate Protection and to Prohibit the Use of Cash Collateral. New South's motion was accompanied by an affidavit that detailed the collateral's state of disrepair and included a 15–page itemization of repairs needed. New South filed an amendment to this motion on June 12, 1989, alleging the Debtor filed its petition in bad faith and requesting dismissal of the case.

At the hearing on New South's motion, Robert Maner testified that he could obtain the funds necessary to repair the apartment complex. On June 9, 1989, after notice and a hearing, the court denied New South's motion and entered an order regarding payment and sequestration of rents and other matters. The court extended its Order of June 9 until July 17, 1989, finding that New South's interest in the collateral was adequately protected.

The Debtor's schedules filed on June 15, 1989 reflect in the Statement of Financial Affairs for Debtor Engaged in Business that Donald Jones and Gerald Travis were limited partners of the Debtor. Daniel Maner, Donald Maner, Bob Weigt, and Vic Graffeo were shown as partners having

withdrawn within the last year. The schedules also listed New South as a creditor having a secured claim of $1.52 million, and the National Bank of Commerce (NBC) as a creditor having a claim of $240,000.00, secured by a second mortgage on the apartment complex.

After a hearing on July 17, 1989 the court entered an order dated July 17, 1989 granting New South's motion for relief from the automatic stay. On August 25, 1989, NBC filed a motion seeking relief from the stay, and five days later the Bankruptcy Administrator's office requested that the case be converted to one under Chapter 7 of the Bankruptcy Code. After a hearing, the court dismissed the Debtor's case on September 26, 1989.

Representations of counsel for New South in its brief to this Court show that, after obtaining relief from the automatic stay, New South spent approximately $300,000.00 to repair and improve the property. Counsel also represented that New South sold the property on September 27, 1990 to Collat, Inc., which executed a first mortgage on the property in favor of First Alabama Bank and a second mortgage in favor of W.T. Ratliff, Jr.

Other events transpired following the dismissal of this case that this Court considered in ruling on this Motion. On June 9, 1989, Robert Maner sent to Gerald Travis a letter stating that the partnership had filed for protection under the Bankruptcy Code to stop the scheduled foreclosure. The letter also indicates that copies were sent to all other limited partners. *See,* Brief of National Bank of Commerce, Exhibit A. Following that letter, on July 28, 1989, Robert Maner sent a letter to all partners stating that "the project was released from bankruptcy court to be foreclosed last week." *Id.* These two letters appear to represent the first notice Movants had concerning the partnership's bankruptcy, although some of the Movants do not acknowledge receipt of these letters. The court file also shows that Gerald Tra-

vis received copies from the file on November 14, 1989 and representations made by counsel at the hearing on this Motion support this.

On December 26, 1991 the Movants herein filed their Motion to Reopen. Counsel having presented oral argument and submitted written briefs, it appears to the Court that the motion is due to be denied for the reasons set out below.

■ Movants seek relief under 11 U.S.C. § 350, which allows the bankruptcy court to reopen a case in the court in which it was closed to administer assets, accord relief to the debtor, or for other cause. In its brief, New South suggests that Section 350 is inapplicable to this case. The first step in statutory construction is to begin with the language itself. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). If the language of the statute is plain, looking at the legislative history is unnecessary and the sole job for the court is to enforce the statute according to its terms. *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917).

■ Although Movants rely on Section 350 of the Bankruptcy Code, it does not support their position. Section 350 deals with cases that have been closed, not cases that have been dismissed. Other provisions of the Bankruptcy Code indicate a clear distinction between closed and dismissed cases. For example, Section 350 itself states that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). The Debtor's estate was never fully administered, nor was the trustee (or Debtor-in-Possession) ever discharged.

Cases that have been dismissed,[1] on the other hand, are treated as much as possible

---

1. The order dismissing the debtor's petition read, in pertinent part, "the original petition filed by the debtor on June 1, 1989, is hereby DISMISSED and said case will be closed in due

course." Ord. of Sept. 26, 1989, In re Woodhaven, Ltd., No. 89–07356 (emphasis in original). Closing, in this case, refers to the administrative closing of the bankruptcy file, not the statutory

as having never been subject to the bankruptcy court's jurisdiction. Section 349 of the Bankruptcy Code states that a dismissal reinstates proceedings or custodianships that the bankruptcy case superseded, reinstates avoided transfers and voided liens, vacates any order, judgment, or transfer ordered as a result of a transfer avoidance, and revests the property of the estate in the entity in which the property was vested when the case was commenced.

The basic scheme of subsection (b) of Section 349 is "to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." H.R.Rep. No. 595, 95th Cong., 1st Sess., 338 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., 48–49 (1978), 1978 U.S.Code Cong. & Ad.News, 5787, 6294, 5834–5835.

A closed case and a dismissed case represent totally different results; closing a case contemplates a full estate administration and the completion of the bankruptcy process, whereas dismissing a case restores the assets and parties to their prepetition status, as if the case had never been filed. Section 350 of the Bankruptcy Code, which Movants rely upon, applies on its face only to closed cases, therefore Movants cannot use that section to resurrect a dismissed case.

Other courts facing a similar situation have reached a similar result. *In re Income Property Builders, Inc.*, 699 F.2d 963 (9th Cir.1982), *reh'g denied*, 699 F.2d 965 (9th Cir.1983); *Matter of Garcia*, 115 B.R. 169 (Bankr.N.D.Ind.1990). The *Income Property* court held that "an order dismissing a bankruptcy proceeding is not an order closing it[.]" 699 F.2d at 965. The court noted that the effect of dismissal is to revest the debtor with all property of the estate, subject to all encumbrances that existed prior to filing, and that the debtor's property is then "subject to the general

closing of a case under Section 350 of the Bankruptcy Code. This administrative closing is referred to as "judicial closing," and occurs when a case is dismissed. *Bankruptcy Forms Manual*, Administrative Office of the United States

laws unaffected by bankruptcy concepts." *Id.* The court went on to say

On the other hand, a bankruptcy is normally closed after the bankruptcy proceedings are completed. At that time the debts of the bankrupt are usually discharged and the proceeds of debtor's nonexempt assets divided among creditors. A bankruptcy is reopened under 11 U.S.C. § 350(b), not to restore the prebankruptcy status, but to continue the bankruptcy proceeding. The word "reopened" used in Section 350(b) obviously relates to the word "closed" used in the same section. In our opinion a case cannot be reopened unless it has been closed. An order dismissing a bankruptcy case accomplishes a completely different result than an order closing it would and is not an order closing.

*Id.* (footnote omitted).

In agreeing with the *Income Property* court and rejecting a debtor's motion to reopen a dismissed case, the *Garcia* court said that to allow a Section 350(b) reopening of a dismissed case would "make dismissal an almost meaningless act, since the court would be required to reinstate a dismissed case upon being presented with some articulated 'cause' for reopening it." 115 B.R. at 170.

The Movants, in their brief and at the hearing on this matter, attempted to invoke this Court's broad, equitable powers under Section 105(a) of the Bankruptcy Code to allow this case to come back before the Court on a motion to reopen. Although the Court may, under Section 105(a), "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, 11 U.S.C. § 105(a), the bankruptcy courts must practice these equitable powers within the confines of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *Johnson v. First National Bank of Montevideo, Minn.*, 719 F.2d 270 (8th Cir.

Courts, Ch. II at 23. The phrase "closed in due course," therefore, refers solely to an internal operating procedure of the bankruptcy clerk's office.

1983) *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Texas Consumer Finance Corp.,* 480 F.2d 1261 (5th Cir.1973). The bankruptcy courts may not use their equitable powers if to do so would strip another Code provision of its meaning, *In re Plaza de Diego Shopping Center, Inc.,* 911 F.2d 820 (1st Cir.1990); *In re Minor,* 115 B.R. 690 (D.Colo.1990); *Lerch v. Federal Land Bank,* 94 B.R. 998 (N.D.Ill.1989), or as one court has more eloquently said, Section 105(a) does not necessarily "constitute a roving commission to do equity." *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986).

Having determined that Movants cannot rely on Section 350 to have this case reopened, the Court considered their Motion to Reopen as a motion to vacate the order of dismissal pursuant to Bankruptcy Rule 9024, which incorporates Rule 60 of the Federal Rules of Civil Procedure.[2] The pertinent part of the rule is as follows:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60(b).[3]

Because more than one year passed after the entry of the order dismissing the Debtor's petition before the filing of the Motion to Reopen, the Movants herein cannot rely on clauses (1), (2), or (3) of Rule 60(b). The one-year limitation is an absolute bar to actions brought pursuant to these three clauses. *United States v. Berenguer,* 821 F.2d 19 (1st Cir.1987); *Schauss v. Metals Depository Corp.,* 757 F.2d 649 (5th Cir. 1985). Clause (5) of Rule 60(b) is inapplicable to the facts at hand. Therefore, Movants must rely upon either clause (4) or clause (6).

■ Although the rule states that proceedings brought pursuant to clauses (4), (5), or (6) must be made within a reasonable time, courts have held that no time limit applies to proceedings brought to set aside a judgment as void. *Meadows v. Dominican Republic,* 817 F.2d 517 (9th Cir.), *stay denied,* 484 U.S. 951, 108 S.Ct. 343, 98 L.Ed.2d 369, *cert. denied,* 484 U.S. 976, 108 S.Ct. 486, 487, 98 L.Ed.2d 485 (1987).

■ The only tenable theory Movants could assert entitling them to relief from the judgment because it is void is that it is void because they were not given notice of the bankruptcy proceeding. However, under the Bankruptcy Code and Rules, the Movants, as limited partners of the Debtor, did not have an absolute entitlement to notice of the proceedings. Whether to give them notice was discretionary, and the court chose not to give notice.

The Court's analysis of this conclusion rests on the interpretation of Sections 341 and 342 of the Code and Rule 2002(d) of the Bankruptcy Rules.[4] Under Section 341, a

---

2. The incorporation of Rule 60 is made with certain exceptions not relevant here.

3. Although several clauses of this rule use the term "judgment," under the Bankruptcy Rules "judgment" means any appealable order. Fed.R.Bankr.P. 9001(7). An order of dismissal is an appealable order.

4. Because these provisions are open to differing interpretations, the Court finds that they are ambiguous and will therefore look into their legislative history.

meeting of equity security holders [5] is not required, as is a meeting of creditors. The legislative history clearly indicates such a meeting is optional.[6] H.R.Rep. No. 595, 95th Cong., 1st Sess., 331 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., 42 (1978). Further court authority to regulate whether an entity receives notice is found in Section 342, which states that there "shall be such notice as is appropriate ... of an order for relief in a case under this title." 11 U.S.C. § 342(a). The phrase "as is appropriate" means that notice is not required in every instance. Congress left it to the Bankruptcy Rules to prescribe who should receive notice and what type of notice is appropriate. H.Rep. No. 595, 95th Cong., 1st Sess., 331–32 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., 42 (1978).

Bankruptcy Rule 2002 and the advisory committee notes thereto also indicate the permissive nature of notice to equity security holders. The drafters of the provision relating to notice to equity security holders said of the section:

> Subdivision (d) relates exclusively to the notices given to equity security holders in chapter 11 cases. Under chapter 11, a plan may impair the interests of the debtor's shareholders or a plan may be a relatively simple restructuring of unsecured debt. In some cases, it is necessary that equity security holders receive various notices and in other cases there is no purpose to be served. This subdivision indicates that the court is not mandated to order notices but rather that the matter should be treated with some flexibility. The court may decide whether notice is to be given and how it is to be given.

Bankruptcy Rule 2002(d), Advisory Committee Note (1983).

The Movants in this case were entitled to notice only if the court had decided that they should receive it. Because no such order was ever entered giving them the right to receive notice, that right never vested in them and they cannot now attack the court's order of dismissal because it is void.

This Court also concludes that, notwithstanding the lack of formal notice from the bankruptcy court, the Movants herein had notice of the proceedings. The letters of June 9 and July 28, 1989 from the Debtor's general partner to the limited partners constitute constructive notice of the bankruptcy proceedings. Certainly the letter of July 28 serves as notice that certain rights that the limited partners held in the partnership had been affected, and the Movants should have immediately taken steps to ascertain what had happened. Instead, they chose to wait.

Other parties, who had a right to rely on the order dismissing the case, did so and now stand in a position to suffer potential harm if the motion to reopen is granted. New South expended a considerable amount of money repairing the apartment complex, and has transferred the property to a third party. Movants, therefore, are not entitled to relief under Rule 60(b)(4).

In an analogous case turning on the notice requirement, another court has reached the conclusion that certain parties affiliated with a debtor are not entitled to notice. *In re Royal Properties and Investments, Inc.*, 68 B.R. 245 (Bankr. S.D.Fla.1986). In that case, a majority shareholder of a corporation that owned all the stock of the debtor corporation made a motion to reinstate a bankruptcy proceeding so that it could operate the debtor under Chapter 11. The shareholder's

---

**5.** An equity security holder includes, under the Code, a limited partner. 11 U.S.C. § 101(16)(B).

**6.** The Court is aware of the legislative history to Section 342 that says, "Section 405(d) due process will certainly require notice to all creditors and equity security holders." H.Rep. No. 95–595, 95th Cong., 1st Sess., 331–332 (1977). This refers to Section 405(d) of the former Bankruptcy Act, which requires the "petitioner or such other person as the court designates" to give notice of a filing or dismissal to certain parties, including all creditors listed on the original petition. 11 U.S.C.A. § 405(d) (West Supp. 1979). This does not, in the Court's opinion, override the analysis of the notice provisions of the current law. First, Section 405(d) required only notice to listed creditors. Second, the legislative history of the notice provisions of Section 342 clearly leave to the Bankruptcy Rules the form and recipients of notice.

grounds for reinstatement of the case are similar to those of these Movants in that it asserted that the petition was filed without its knowledge or consent and that it was unhappy with the manner in which the debtor's corporate leadership handled the bankruptcy proceedings. Further, the *Royal Properties* movant alleged in substance if not in form that the debtor's representation amounted to a fraud on the corporation committed by the corporate leadership. The court concluded that the shareholder was not entitled to notice, nor could it complain of the representation of his interest in the bankruptcy proceeding.

There is no requirement that a majority shareholder or any shareholder in the debtor corporation receive notice of the filing of a bankruptcy petition. It is the responsibility of shareholders to select appropriate representatives and to supervise the actions of those representatives. If this movant in fact indirectly controlled the debtor corporation, it should have taken steps long ago to assure adequate representation of its interests through the board and officers of the corporation.

The bankruptcy proceeding is not the forum to seek new representation. As a leading commentator noted:

> "[I]t is outside the scope of bankruptcy to go into conflicting claims of stockholders...." 6 Remington, § 2890 at 510, *cited with approval in, Matter of First Colonial Corp. of America,* 693 F.2d 447, 451 (5th Cir.1982).

68 B.R. at 246.

Because shareholders and limited partners are, under the Code, both equity security holders, an analysis of one's situation is analogous to that of the other. Therefore, the limited partners in this case, under the *Royal Properties* approach, should have protected their interests before the bankruptcy ever arose by choosing a general partner with whom they would be more satisfied. That they have the power to do so is a matter of Alabama statutory law, which allows limited partners to vote on the removal of a general partner. Ala. Code § 10–9A–42(b)(5)(ii) (1987). As *Royal Properties* suggests, they should not be allowed to use the bankruptcy forum to adjust their business associations after events occurred that caused them to doubt the management decisions of their general partner. The *Royal Properties* court also noted that, if the movants were attempting to establish that the bankruptcy's handling was a fraud on the corporation, and therefore on its shareholders, a state forum was better suited to hear their complaints. 68 B.R. at 246. Similar issues exist in the Woodhaven Movants' motion, and a state forum would be better equipped to handle those issues.

Because Movants have no relief available under the first five clauses of Rule 60(b), the Court then turns to clause (6) to see if Movants can be afforded relief thereunder.

■ Courts deciding what a reasonable time is for purposes of filing a motion to vacate or set aside a bankruptcy court's order for "any other reason justifying relief" have said that the circumstances of each case will determine whether a motion has been filed within a reasonable time. *Olle v. Henry & Wright Corp.,* 910 F.2d 357 (6th Cir.1990) (facts of the case, including length and circumstances of the delay, prejudice to opposing party by reason of delay, and circumstances compelling equitable relief, govern whether motion is filed within reasonable time); *United States v. Boch Oldsmobile, Inc.,* 909 F.2d 657 (1st Cir.1990) (whether delay has caused prejudice and whether inaction was for good reason are factors in deciding reasonable time); *In re Johnson,* 13 B.R. 342 (Bankr.D.Minn.1981) (each fact situation should be judged on its own merits; reasonable time is before others can be injured by inaction). Further, courts have said that the circumstances mandating relief must be unusual and extreme. *Henry & Wright, supra.*

■ Though the facts presented here may be unusual, this Court does not find that they are extreme. The Movants had notice of the bankruptcy proceeding from their own general partner, and waited more than two years before filing this motion. The familiar equitable doctrine of laches,

that equity does not protect those who sleep on their rights, is persuasive here. The Movants had the opportunity to bring this motion well before the one-year period that applies to other grounds of relief under Rule 9024 lapsed. Equity demands that they should have acted immediately when they were apprised of the bankruptcy and New South's foreclosure on the partnership's major asset. The representations made by counsel at the hearing on this matter and in the Movants' brief to this Court do not convince the Court that any justifiable reason existed for the Movants' delay in making this motion.

Finally, the Court doubts that reopening this case would serve any purpose. Movants represent a two-fold purpose for bringing this Motion: they assert that an additional asset of the estate has been discovered, and, more important, they seek to have the relief from stay set aside. The Court feels that the partnership can deal with the additional asset without this Court's intervention. Further, the Court strongly feels that an attempt to set aside the relief from stay would be futile. Counsel for the Debtor said at the hearing on this matter that New South's motion for relief from the automatic stay was well supported by the law and the facts. The Court also notes that, although the Movants were not present at the several hearings on the relief from stay, their interests were adequately represented. Rehearing the relief from stay would, therefore, be a waste of judicial resources.

Based on the foregoing, the Movants' Motion to Reopen is due to be denied, and when considered in the alternative as a Motion to Set Aside the Order of Dismissal, it is also due to be denied.

It is, therefore,

ORDERED, ADJUDGED, AND DE-CREED that the Motion to Reopen shall be and hereby is DENIED.