IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 91-4334

CAL R. SENECA, RYAN SENECA
and JAMIE SENECA,

Plaintiffs-Appellants,

versus

PHILLIPS PETROLEUM COMPANY, ET AL.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana

(June 10, 1992)

Before WILLIAMS, JOLLY, and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Cal R. Seneca, Ryan Seneca and Jamie Seneca appeal from the grant of summary judgment in their action against Phillips Petroleum arising from Cal Seneca's back injury incurred on a Phillips offshore platform. We find that the district court's grant of summary judgment on Seneca's negligence claim was based on an erroneous interpretation of Ainsworth v. Shell Offshore, Inc., 829 F.2d 548 (5th Cir. 1987). Phillips is nonetheless entitled to summary judgment on Seneca's negligence claim because the record evidence demonstrates that no material issue of fact exists on this claim. Seneca has also asserted claims under La. Civ. Code Art.

2317 and 2322.  We affirm the district court's grant of summary judgment for Phillips on both of these claims.

I.

Nitrogen Pumping and Coiled Tubing Specialists, Inc. (NPACT) provides coil tubing services for Phillips Petroleum's drilling operations in the Gulf of Mexico.  At the time of the accident, Seneca was an NPACT employee assigned to perform coil tubing services on an offshore platform owned and operated by Phillips.

Phillips was responsible for transporting workers to and from its offshore facilities.  On April 14, 1987, Tad Carl, an NPACT foreman, asked Phillips to bring a replacement worker out to the platform to allow an NPACT employee to be transported to shore. The replacement employee arrived at the dock and signed in, but for some reason was not transported to Platform 66C to join Seneca's crew. Seneca alleges that Phillips was negligent in its failure to inform the replacement worker that he should board the helicopter going out to platform 66C.

After the NPACT employee had left the platform but before the replacement employee had arrived, Phillips ordered NPACT to rig down its coil tubing unit on Platform 66A.  A rig down operation would normally call for three employees, but because of the delay in transporting the replacement worker to the platform, only two NPACT employees were available.  NPACT employees Carl and Seneca were moved to 66A to begin the rig down operation and Carl was assured that Phillips employee John Guidry would help them with the rig down.

Before the rig down was completed, Guidry stopped assisting Seneca and left the immediate area, apparently in response to an alarm or buzzer on the platform. He did not indicate how long he would be gone or where he was going. Seneca continued to coil the last few feet of hoses and then attempted to close the heavy gate to the hose basket by himself. He had never closed the gate by himself before, but had always had the assistance of a coworker. He had, however, seen other, larger men close these gates before by themselves. By his own admission, Seneca made no efforts to locate anyone to help him lift the gate. Seneca decided to lift the gate because there was no one else within sight or hearing and "you just don't whine to anyone about . . . well, you left me here and you wouldn't do it." Seneca severely injured his back in the attempt to close the gate.

Seneca filed suit against Phillips on several theories of liability. In October 1988, Phillips moved for summary judgment on Seneca's claims under La. Civ. Code Arts. 2315, 2316, 2317, and 2322. The court granted its motion as to Art. 2317, but denied it as to the other provisions. In February 1989, Phillips filed another motion for summary judgment on the remaining claims. The district court granted the motion for summary judgment as to all claims. Seneca timely appealed.

## II.

The district court held that under <u>Ainsworth v. Shell Offshore, Inc.</u>, 829 F.2d 548, 550 (5th Cir. 1987), Phillips owed no duty to Seneca. This basis for the grant of summary judgment was

3

based upon a misinterpretation of the proper scope of Ainsworth. In Ainsworth, Shell's subcontractor had been negligent in its maintenance of safe working conditions on the platform and the question was to what extent a contractor is liable for its subcontractor's negligence. We held that under Louisiana law "a principal generally is not liable for the offenses an independent contractor commits in the course of performing its contractual duties." 829 F.2d at 550 (emphasis added). Unlike Ainsworth, Seneca does not base his claim upon the negligent acts of the subcontractor, but alleges that his harm was caused directly by the negligent acts of Shell employees. Therefore, Ainsworth has no application here.

Phillips argues that we may nonetheless affirm the summary judgment on the ground that there is no genuine issue of material fact on the question of Phillips' negligence. See Church of Scientology of Calif. v. Cazares, 638 F.2d 1272, 1281 (5th Cir. 1981) (court may uphold grant of summary judgment on different grounds than relied upon by trial court.). We agree. Our review of the record convinces us that Phillips is entitled to summary judgment on the issues of negligence and causation.

Seneca relies upon Lazzell v. Booker Drilling Co., Inc., 816 F.2d 196 (5th Cir. 1987), where we held that a principal could be liable for its employees' negligent failure to carry through on a promise to help a subcontractor complete operations on the oil rig. Lazzell stands for the proposition that a contractor who promises to assist a subcontractor in the completion of a task accepts the

4

responsibility of performing that task non-negligently. Assuming arguendo that Phillips accepted such a duty in this case, Seneca cannot prevail unless he can also demonstrate that Phillips' employees acted negligently and that their negligence caused his injury.

Seneca alleges that Phillips is liable because Guidry was negligent in leaving the work area during the rig down operation. No reasonable jury could conclude from the record evidence that Guidry was negligent in leaving the work he was doing with Seneca for one to two minutes during an operation that took several hours. There is no evidence that a hand assisting in the rig down procedure is required to be available at every moment during a routine rig down. The undisputed evidence is that Guidry left Seneca's immediate area only one to two minutes before the accident and was back in time to help Carl tend the injured Seneca. Unlike the situation in Lazzell where an impending storm made immediate action necessary, there were no exigent circumstances requiring that the gate be lifted before Guidry returned or someone else was available. In fact, Seneca admitted in his deposition that there were several other tasks to be completed in the rigdown which could have been done safely in Guidry's absence. This accident resulted from Seneca's decision to attempt the lift of the gate on his own, not from any negligent action by Guidry.

Seneca further asserts that Phillips was negligent in failing to ensure that a replacement NPACT crew member was transported to the platform. Even if we assume that Phillips was negligent in

arranging the crew change, this alleged negligence cannot be said to have proximately caused Seneca's injury. The undisputed evidence indicates that NPACT had on several previous occasions completed rigdown procedures with two NPACT men and an additional man provided by Phillips. Seneca has offered no evidence that it was improper for the rig down to be completed by a combined work crew of NPACT and Phillips employees. His only real complaint is that the employee whom Phillips assigned to do the work was negligent. Because we find that Guidry did not negligently cause Seneca's injuries, the failure of Phillips to transport another NPACT worker to take his place cannot constitute a proximate cause of Seneca's injury.

### III.

Seneca also alleges that Phillips is strictly liable under La. Civ. Code Art. 2317. To prove liability under Art. 2317, the plaintiff must show that the thing which caused the injury was in the care or custody of owner; that a vice or defect existed in the thing; that the vice or defect created an unreasonable risk of harm; that the defendants failed to make the thing safe; and that the vice or defect caused the alleged injury. Friou v. Phillips Petroleum Co., 948 F.2d 972, 975 (5th Cir. 1991). The district court granted summary judgment for Phillips because Seneca failed to produce sufficient summary judgment evidence to support his argument that Phillips had control over the NPACT coil tubing unit.

Our case law has broadly interpreted the custody requirement to extend to those who have general safety supervision over an

6

area. Dobbs v. Gulf Oil Company, 759 F.2d 1213 (5th Cir. 1985); Haas v. Atlantic Richfield, 799 F.2d 1011 (5th Cir. 1986). We need not address the issue of custody, however, because Seneca has failed to establish a genuine issue of material fact as to whether the coil tubing unit contained a vice or defect. Seneca alleges that the unit was defective because it did not contain a tag cautioning that two persons are required to lift the basket. The sole evidentiary support for this claim is the expert report of Stephen Killingsworth.

We first note that there are numerous procedural problems with our consideration of Killingsworth's report at all. The report was placed into evidence after the district court had already ruled upon Phillips' motion for summary judgment. On appeal, we consider only the materials before the district court at the time of its ruling. Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1307 (5th Cir. 1988). The district court denied Seneca's motion to alter or amend the judgment on the basis of this evidence. We review the denial of such a motion for abuse of discretion only. Schauss v. Metals Depository Corp., 757 F.2d 649 (5th Cir. 1985). Seneca had ample opportunity to come forward with evidence supporting its claim of a vice or defect and failed to do so. The district court acted well within its discretion in refusing to alter or amend the judgment on the basis of an unsworn letter from a person with no recitation of his qualifications or any other indication of expertise. See Duplantis v. Shell Offshore, Inc., 948 F.2d 187,

7

191 (expert letter not considered for summary judgment purposes where it is unsworn and fails to indicate expert's qualifications).

Even if we consider Killingsworth's report, however, we would still affirm summary judgment for Phillips. The relevant part of the report states that "[t]he only possible deficiencies in the coiled tubing system's gate was [sic] the lack of caution tags instructing users to have two people lift the gate. However, the lack of caution tags was not the cause of this accident." Such an equivocal statement of possible defect coupled with a clear denial of causation cannot possibly create an issue of fact sufficient to withstand summary judgment.

IV.

Seneca has also alleged liability under La. Civ. Code Art. 2322. In order to prove liability under Art. 2322, the plaintiff must demonstrate that a building which the defendant owns has a ruin caused by a vice in construction of a neglect of the owner which causes the plaintiff's damage. Olsen v. Shell Oil Co., 561 F.2d 1178 (5th Cir. 1977). Art. 2322 extends to appurtenances of buildings. In determining whether the coil tubing unit was an appurtenance of the oil platform, the court considers how securely the structure is attached to the building and the degree of permanence intended. Harrison v. Exxon Corp., 824 F.2d 444 (5th Cir. 1987).

The coiled tubing unit at issue here rested on skids and was only temporarily connected to the platform while it was in use. It was intended to be moved by NPACT from one platform to another as

8

needed. Therefore, the district court concluded that the unit was not an appurtenance covered under Art. 2322.

Seneca argues that the large size of the coiled tubing unit and the number of hours required to disengage and move it make it permanent enough to support Art. 2322 liability. We disagree. None of the cases to which Seneca points apply Art. 2322 to an item which is designed to be moved regularly. Although the coiled tubing unit is difficult to move, it is clearly designed for temporary use on a platform and not as a permanent addition. The district court correctly granted of summary judgment on this claim.

The judgment of the district court is AFFIRMED.